Bichardson, J.,
delivered the opinion of the court :
The claimant, an officer of the Army, sues to recover only the longevity pay allowed by law (now embraced in section 1262 of the Be vised Statutes) of 10 per centum of his current yearly pay for each term of five years’ service, according to the decision in Tyler’s Case, (16 C. Cls. R., 223, affirmed on appeal, 105 U. S. R., 244), over and above the amount already received by him, which was computed only on the yearly pay of his grade. With the pay he has received in other respects he is content.
He claims to have been continuously in the Army since April 29,1862. On behalf of the defendants it is contended that for part of the time he was not an officer, duly appointed as required by the Constitution, and therefore he is not only not entitled to have that time counted for longevity pay, but he must be held liable to refund the amount of pay and allowances which he has received during that period.
The facts are as follows: On the 29th day of April, 1862, the • claimant became an enlisted man; on the 1st of April, 1863, he was duly appointed, by and with the advice and consent of the Senate, a second lieutenant. On the 6th of January, 1864, he was in like manner appointed a first lieutenant.
He so continued until, on the 18th of September, 1866, he tendered his “ immediate and unconditional resignation, to take effect on the 15th of October, 1866.” This resignation was accepted October 18,1866, and of that fact he was duly notified.
On the 4th of December, 1866, by direction of the President, the order accepting his resignation was revoked and he was directed to join his proper station without delay. -This order was -obeyed, and he has in point of fact been in actual service ever .since. The following subsequent proceedings have been had in the premises:
On the 12th of December, 1866, the President nominated him -.to the Senate for restoration to the office of first lieutenant, with his former date of rank, the place not having been filled in the mean time by the appointment of another person in his *383 ■stead, and on the 23d of February, 1867, the Senate gave its advice and consent thereto.
No formal commission was then issued to him, because at that time it was not the practice of the Executive to issue new commissions in cases of that kind. But the action of the Senate was spread upon the records of the War Department, in accordance with the then existing practice, and he was regarded by that department as having been duly reappointed. This practice was changed in May, 1869, and on the 13th of that month a formal commission, under the signature of the President, was given to him as first lieutenant, “ to rank as .such from the 6th day of January, 1864,” the date of his first .appointment to that office.
On the 16th of May, 1867, the claimant was duly promoted and appointed, with the advice and consent of the Senate, to be a captain in the Army, which office he still continues to hold.
Several questions of law arise upon these facts:
1. Did the resignation of the claimant, followed by its acceptance and notice thereof to him, completely remove him from the office so that he could not be restored to it by a revocation of ¡the President’s order of acceptance with directions to the claimant to join his proper station without the advice and consent of the Senate ?
On this point the law has been authoritatively settled by the Supreme Court in Mimmack’s Case (97 U. S. R., 426, affirming the judgment of this court therein, 10 C. Cls. R, 584). Mimmack, a captain in the Army, tendered his resignation, which was accepted October 29, 1868, and notice thereof was given •to him on the 8th of November following. A month after-wards, on the 11th of December, 1868, on the claimant’s application, the President revoked the acceptance of the resignation and ordered him to duty.
There were other facts in the ease, but the court passed upon Uie question thus raised. In the opinion it is said:
“Prior to the act of the 13th of July, 1866 [ehap. 176, section ■5, now Bevised Statutes, section 1229 and section 1624, article 36, p. 281], the President could dismiss an officer in the military or naval service without the concurrence of the Senate, but he never could nominate aiid appoint one without the advice and consent of the Senate, as required by the Constitution. (Dubarry's Case, 4 Op. Att’y-Gen., 603.)
*384 “ Since the passage of that act the President cannot dismiss such an officer in time of peace, and certainly no vacancy in such an office can be filled without the advice and consent of the Senate; from which it follows that the opinion of the Attorney-General, that the subsequent action of the President did not restore the petitioner to the military service, is correct.” (12 Stat. L., 316.)
The opinion of the Attorney-General, thus approved, was-that of Mr. Evarts (12 Opins., 555), in the same case of Mim-mack. In answer to the question “ whether the revocation by the President of the acceptance of the resignation of Captain Mimmack had the effect of restoring him to his former position in the military service,” he advised—
' “ This question I think must be answered in the negative. Upon the facts as stated, it is clear that there was a valid resignation and an unconditional acceptance of it, the concurrence of which operated to remove the incumbent from his office in the military service, and nothing short of a new appointment, could have the effect of restoring him to that office. Oases, I am aware, have occurred, in which a resignation and acceptance of it by the President or other proper authority, were not supposed to have been attended with such consequences. But in those cases it was held there was no valid and efficient resignations, and the acceptance of the President or other proper authority was inoperative, and therefore capable of being recalled or withdrawn.”
2. Holding on the authority of Mimmack’s Case, that the claimant was out of office upon the acceptance of his resignation and notice given him to that effect, and that he was not restored by the order of revocation, it is to be determined whether or not he was restored by the subsequent proceedings.
The’office which he had held was- still vacant when the President nominated him. for restoration or reappointment, and when, on the 23d of February, 1867, the Senate advised and consented thereto. Had the President thereupon issued a formal commission to him the appointment would have been complete without question.
At that time it was not considered by the Executive, as represented by the War Department, to be necessary to issue new commissions to officers thus restored and reappointed to their former positions. It appears to have been understood, and so practiced, that the action of the President in nominating and the Senate in consenting thereto, spread upon the records of *385 the Department, was a sufficient appointment. All parties concerned acted upon that theory.
In Marbury v. Madison (1 Cranch, 157), the Supreme Court say: “ The acts of appointing to office and commissioning the person appointed can scarcely he considered as one and the same, since the power to perform them is given in two separate and distinct sections of the Constitution,” and the opinion is there expressed that when the President, with the advice and consent of the Senate, by “ an open and unequivocal act,” expresses his will making an appointment, the appointee is intitled to the office without a formal commission.
Did the President so express his will in this case ? We are of opinion that he did. He followed the executive practice which existed at that time in such cases. The action of the Senate was recorded in the War Department, and the appointee was regarded as entitled to the office and was permitted to have and to hold the same. This must be taken to have been done with the knowledge and consent of the President, if not by his express direction. The commission issued by the President more than two years subsequently was an executive construction and confirmation of his previous action, and of the practice of the War Department, so far as it could be given, although as a new appointment it might have no retroactive effect.
In Moore’s Case (95 U. S., 760) the Supreme Court held that the certificate of an examining board, that a satisfactory examination had been passed, approved by the Secretary of the Navy, and notice thereof given to the claimant, without any other evidence of the knowledge or consent of the President, was an appointment by him. • In the presentcase thereisshown in the findings quite as much evidence of an open and unequivocal act of appointment on the part of the President as in that, with the addition that here a commission in accordance with the advice and consent of the Senate was actually issued by him several years afterwards in confirmation of what had previously been done.
The Moore case is authority that an informal proceeding in the Navy Department, without any express order of the President, was his act and operated as an appointment. That decision is conclusive on the point we are now considering.
*386 3. Begarding the action of the President and Senate, followed by the proceedings in the War Department, as constituting a valid appointment, the question is presented, When did it take effect ? On the 23d of February, 1867, when the Senate gave its consent, and when, in the absence of other data, we must presume that the War Department made the* record entry thereof, or on the 4th of December, 1866, when the President revoked His order accepting the resignation of the claimant, or on the 18th of October, 1866, when the resignation was accepted and the claimant went out of office?
In several cases we have held that neither the President alone, nor the President, with the advice and consent of the Senate, can give a retroactive effect to the appointment of an officer by antedating the appointment so as to entitle him to the emoluments of the office prior to the time of his actual appointment, except where such a course is expressly authorized by'statute. (Kilburn’s Case, 15 C. Cls., 47; Collins’s Case, 15 id., 34; Burchard’s Case, (ante) and Young’s Case (ante), where the subject is more fully considered. See also 4 Opins. Attys. Gen., 603.)
We adhere to the principles laid down in those cases, and hold that the appointment by the President was on February 23, 1867, and that it took effect and gave the claimant his office at that date, and not before.
4. We are now to determine how much of the time stated in the petition shall be credited to the claimant under the different circumstances of his case for the purpose of computing his longevity pay. The following are the statute provisions on the subject:
Bevised Statutes, sec. 1262:
u There shall be allowed and paid to each commissioned officer below the rank of brigadier-general, including chaplains and others having assimilated rank or pay, ten per centum of their current yearly pay for each term of five years’ service.”
Act of June 18,1878, chap. 362 (Supplement to Bev. Stat., 362):
“ Sec. 7. That on and after the passage of this act all officers of the Army of the United States who have .served as officers in the volunteer forces during the war of the rebellion, or as enlisted men in the armies of the United States, regular or volunteer, shall be, and are hereby, credited with the full time *387 they may have served as such officers and as such enlisted men in computing their service for longevity pay and retirement.”
Act of June 30,1882, chap. 251 (22 -Stat. L., 118):
“ Provided, That from and after the first day of July, eighteen hundred and eighty-two, the ten per centum increase for length of service allowed to certain officers by section twelve hundred and sixty-two of the Revised Statutes shall be computed on the yearly pay oí the grade fixed by sections twelve hundred and sixty-one and twelve hundred and seventy-four of the Revised Statutes.
In our opinion the word “service” as used in these acts means actual service performed under color of office or other authority, without regard to any defects which might be found in the legal title of the claimant' to the office or position in which he served.
It is a welhknowu fact that, in times of war especially, enlisted men perform service in many cases before their enlistment is fully completed by taking the required oath and being mustered in. They are prevented by necessary delays incident to the service, and without fault of their own, from consummating their technically legal enlistment, but actual service they, enter upon at once. It cannot be, we think, that every officer who has been an enlisted man is required to prove a full, complete, and legal enlistment for the whole time he actually served as such, in order to have that time credited to-him for longevity pay, nor that every officer is to be curtailed-in the computation in the time of his service by informalities or irregularities in his appointment which do not affect the service itself. The reward which the statute is intended to give is-for long-continued actual service, and not as a regular salary for the tenure of office. In that view it matters not whether the officer serves as such de jure or de facto. In either case he comes within the spirit and the meaning, and, we think, within, the letter of the law.
5. The defendants have filed a counter-claim to recover back the amount of current yearly pay and allowances received by the claimant for the period from October 18, 1866, when his resignation was accepted, to the 16th of May, 1867, when he was duly promoted and appointed to be a captain in the Army.
It is therefore to be determined whether or not this amount, or any part of it, can be recovered back. As we hold that the claimant was legally and constitutionally in office from the 23d *388 of February, 1867, we must hold, of course, that he is entitled to the compensation of his office after that date.
The question is therefore narrowed down to the period between October 18, 1866, and February 23, 1867, during which we hold that he was not legally in offices. Part of that time, from December 4, L866, to February 23, 1867, he was in actual service, with the knowledge and consent of the Executive, and was to all intents and purposes an officer defacto. The officers of the Treasury Department paid him as an officer of the Army, recognized by the President and the War Department, without considering his title to the office de jure. Had he sued for his pay it would have been necessary for him to show a legal title to the office, the salary of which he claimed, but that question was not raised in the departments. The disbursing officers paid his salary, and the accounting officers passed the accounts, because he was enrolled among the officers of the Army, was recognized by the War Department as properly there, and was an officer de facto. All parties concerned acted in good faith. The claimant actually performed the service for which he was paid, and in our opinion, under all the circumstances, he has received no money which in equity and good conscience he cannot retain.
In our opinion in Patents Case, which is to follow this, we shall more fully consider the rights of the parties in relation to money thus paid in mutual mistake of the parties, and shall distinguish such a case from that of McElrath (102 U. S. R., 426, affirming the judgment of this court therein, 12 C. Cls. R., 201), where the mistake was to the injury of only one of the parties, and could be corrected without injustice to the other.
So much of counter-claim as relates to the pay received by him while actually performing service must be dismissed.
Part of the counter-claim is for money paid to the claimant for the period from October 18,1866, to December 4,1866, when he was not only not legally in office, but when he performed no service, amounting to $23.75. In this particular the claim is distinguished from the other part of the counter-claim in that the claimant was neither an officer de jure nor de facto, and performed no service. The claimant has no legal claim to this money; he gave no consideration for it, and he cannot in equity and good conscience retain it. That item of the counter-claim is allowed.
*389 6. On the whole case the claimant will have judgment for the balance due him for longevity pay according to the principles thus laid down, after deducting the $23.75 paid to him for the time he was not in actual service, such balance being $231.53.
Nott, J., read an opinion in the caseof Lieutenant Miller (ante), and, the two being decided on the- same day, his opinion in Miller’s case was likewise entitled and filed as his opinion in this.