*J. A. Magoon* for plaintiff.

*C. H. McBride* for defendants.

---

IN THE MATTER OF THE APPLICATION OF CLARENCE D. PRINGLE FOR A WRIT OF MANDAMUS AGAINST JAMES BICKNELL, AUDITOR OF THE CITY AND COUNTY OF HONOLULU, TERRITORY OF HAWAII.

RESERVED QUESTION FROM CIRCUIT JUDGE, FIRST CIRCUIT. HON. C. W. ASHFORD, JUDGE.

ARGUED MARCH 27, 1915.                    DECIDED MARCH 29, 1915.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

CLERKS OF COURTS—*tenure of office.*
     A clerk of the circuit court holds his office during the pleasure of the appointing power.
SAME—*appointment and removal—Sec. 2314 R. L. 1915 construed.*
     Under section 2314 R. L. 1915, which provides that there shall be as many clerks of the circuit courts as may be necessary, appointed and removable by the judge or judges thereof, as the case

may be, held, that in a circuit where there are more judges than one, the appointment or removal of a clerk requires the presence, actual or constructive, of all the judges and the concurrent action of a majority.

SAME—*right of de facto officer to compensation.*

The salary of an office follows the title and when an individual claims by action the office, or the incidents to the office, he can only recover upon proof of title.

SAME—*same—title to the office in issue.*

An officer seeking to compel payment of compensation by mandamus must show that he is an officer *de jure* and not merely an officer *de facto*. In such a proceeding his title to the office may be put in issue.

OPINION OF THE COURT BY WATSON, J.

(Quarles, J., dissenting.)

In a petition for a writ of mandamus before a circuit judge of the first judicial circuit it was alleged that petitioner was appointed clerk of the third division of the circuit court of the first judicial circuit by the Honorable Thomas B. Stuart, third judge of said court, on December 7, 1914; that petitioner duly qualified as such clerk and since said last mentioned date has held said office and is 'entitled to receive the income, profits and emoluments thereof and particularly a salary at the rate of $125 per month from said December 7; that James Bicknell is the duly elected and acting auditor of the city and county of Honolulu, Territory of Hawaii, whose duty it is as such auditor to issue to petitioner warrants upon the treasurer of the city and county of Honolulu for the payment of such salary; that said Bicknell has refused to issue to petitioner warrants upon the city and county treasurer for the payment of his salary. The prayer is for an alternative writ of mandamus directed to said auditor commanding him to issue the warrants or to appear and show cause why he should not do so. An alternative writ issued, to which respondent made return alleging that on the first day of July, 1911, the three judges of said first circuit court duly constituted, appointed and commissioned one V. M. Harrison

a clerk of the circuit court of said first judicial circuit under
and by virtue of the provisions of Act 84 S. L. 1911, and the
said Harrison was thereupon assigned for duty as clerk of the
said circuit court in the division presided over by the third
judge thereof (at that time the Honorable W. J. Robinson), and
thereafter the said Harrison performed his duties as such clerk,
under such assignment, until the seventh day of December,
1914, without any hindrance or interruption whatsoever; that
on the seventh day of December, 1914, the Honorable Thomas
B. Stuart, the duly appointed, qualified and acting successor
in office to said W. J. Robinson, third judge of said circuit court
of the first judicial circuit of the Territory of Hawaii, acting
alone and without the concurrence or acquiescence, as respond-
ent is informed and believes and upon information and belief
alleges the fact to be, of the first and second judges of the said
circuit court of the first judicial circuit of the Territory of
Hawaii, or either of them, attempted to discharge and remove
the said V. M. Harrison as clerk of said court, and on said sev-
enth day of December, 1914, likewise acting alone and without
the concurrence or acquiescence of the said first and second
judges of said court, or either of them, attempted to appoint the
petitioner, Clarence D. Pringle, to the said office of clerk of the
circuit court of the first judicial circuit of the Territory of Ha-
waii, and that the attempted discharge of Harrison and the at-
tempted appointment of Pringle were and are null and void for
the reason that the said acts were not performed by the three
judges of the first circuit court, or at least by a majority of the
three; that Harrison has never resigned his office and has never
been discharged therefrom except, as stated, by Judge Stuart,
and that he is now and at all times since said attempted and
purported discharge and removal has been ready, willing and
able to perform the duties of said office, as to all of which the
said third judge was fully informed and advised, but that he is
and has been since said December 7, 1914, prevented from per-
forming said duties or any of them by the said third judge and

by petitioner; that by reason of the foregoing facts petitioner is not entitled to the relief asked, and respondent in his said return prays that the alternative writ and the proceedings had be dismissed. To the return and answer so filed by respondent petitioner interposed a demurrer, the grounds of which, as relied on in this court, being (a) that the answer and return do not show wherein the discharge of Harrison and the appointment of Pringle are null and void; (b) that the answer and return do not show any legal cause why petitioner should not have the relief prayed. The demurrer was joined in and the respondent was permitted to amend his return and answer by attaching thereto a copy of Harrison's commission as follows:

"TO ALL TO WHOM THESE PRESENTS SHALL COME, GREETING:

BE IT KNOWN, That having full faith and confidence in the honesty, integrity and ability of

## V. M. HARRISON,

and by virtue of the power and authority vested in us by law, we HENRY E. COOPER, First Judge, WM. L. WHITNEY, Second Judge, and W. J. ROBINSON, Third Judge respectively, of the Circuit Court of the First Judicial Circuit of the Territory of Hawaii, by these presents, do constitute, appoint and commission said V. M. HARRISON a Clerk of the Circuit Court of the First Judicial Circuit of the Territory of Hawaii, under and by virtue of Act 84 of the Session Laws of 1911, at the salary of $100 per month, to hold and occupy said office and to receive and enjoy the income, profits and emoluments thereof or connected therewith, with full power and authority to do and perform any and all acts and things and to perform and discharge any and all duties set forth and described in or under the Constitution and laws of the United States and the laws of the Territory of Hawaii which are now in force or which may hereafter be enacted relating or appertaining to or concerning such office or the incumbent thereof.

IN WITNESS WHEREOF, we have hereunto set our hands and the seal of the Circuit Court of the First Judi-

(SEAL)    cial Circuit of the Territory of Hawaii, at Honolulu, Territory of ·Hawaii, this 1st day of July, A. D. 1911.

"HENRY E. COOPER,

First Judge,

"WM. L. WHITNEY,

Second Judge,

"W. J. ROBINSON,

Third Judge."

The honorable circuit judge thereupon reserved to this court the question "whether or not this circuit court should, as the pleadings now stand, sustain the demurrer interposed by the petitioner to the return and answer heretofore filed by the respondent."

In answering the reserved question it becomes necessary to inquire what powers in relation to the appointment of clerks are delegated to the circuit judges, and more particularly to the judges of the circuit court of the first judicial circuit, by the laws of this Territory, with a view of determining whether a judge of the fiirst circuit court, acting alone, has power to appoint and remove the clerk or clerks who are to serve in the particular division of the court presided over by him, or whether such power is vested by law in all of the judges of that court as a body, to be exercised by them collectively. The statutes of Hawaii nowhere designate the term for which a clerk of the circuit court shall be appointed, and it is conceded by both counsel for petitioner and respondent that the tenure of office not being fixed by law the power of removal is incident to the power of appointment, and the term of office will continue during the pleasure of the appointing power. This is in accord with the general rule. *Field* v. *Girard College Directors,* 54 Pa. 233; Mechem on Public Officers, §445.

The statute under which the clerks of the circuit courts are appointed is section 1680 R. L. 1905, as amended by Act 54 S. L. 1907, as further amended by Act 84 S. L. 1911. This

section, as so amended, is section 2314 R. L. 1915, included in chapter 134 under the title "Clerks, stenographers and interpreters." This section reads:

"Section 2314. There shall be a clerk of the supreme court and as many deputy clerks and assistant clerks as the business of the supreme court shall require, appointed and removable by the justices of the supreme court. The clerk of the supreme court shall be ex-officio clerk of all the courts of record of the Territory, and as such may issue process returnable in all such courts.

"There shall be as many clerks of the circuit courts as may be necessary, appointed and removable by the judge or judges thereof, as the case may be."

Prior to the amendment of 1911, section 1680, as amended by Act 54 S. L. 1907, made provision for the appointment of court clerks as follows:

"Section 1680. There shall be a clerk of the judiciary department and as many deputy clerks and assistant clerks as the business of the department shall require, whose salaries shall be fixed by the legislature. The clerk of the judiciary department shall be appointed by the justices of the supreme court, and shall be ex-officio clerk of all the courts of record of the Territory, and as such may issue process returnable in all such courts. He shall have supervision and direction of the deputy and assistant clerks, but shall not be held responsible for their acts or omissions. He shall have charge of the records, moneys and business in the central office in Honolulu and shall supervise and direct the mode of keeping accounts and records.

"There shall be two or more deputy clerks of the first circuit who shall be clerks of the supreme court and of the circuit court of the first circuit. Of these, two may be appointed and removed by the chief justice of the supreme court, and one by each of the circuit judges of the first circuit.

"There shall also be one deputy clerk for each of the other circuit courts appointed and removable by the judge thereof.

"There may also be one assistant clerk appointed and removable by each circuit judge with like power and duties of the deputy clerks, and each assistant clerk so appointed by a circuit judge shall be ex-officio bailiff for the court of the circuit judge by whom he shall be appointed.

In re Pringle, 22 Haw. 557.

"Any deputy clerk or assistant clerk may be removed by the supreme court for inefficiency or misconduct."

From a reading of the law as it stood prior to the amendment of 1911 it will be seen that two of the clerks of the first circuit (or deputy clerks as they were called at that time) were also to act as clerks of the supreme court, these two to be appointed and removed by the chief justice of the supreme court; also that specific provision was made for the appointment by *each* of the judges of the first circuit court of one clerk and an assistant clerk, the latter of whom should be "ex officio bailiff for the court of the circuit judge by whom he shall be appointed." In the law of 1911, which is now in force, and which amended the act of 1907, the word *each* is nowhere used, but in the place thereof it is enacted that "There shall be as many clerks of the circuit courts as may be necessary, appointed and removable by the judge or judges thereof, as the case may be." Under this provision it is contended by counsel for petitioner that in a circuit where there are more judges than one each of such judges may appoint and remove *his* clerk, that is, the clerk who is to serve in the particular division of the court presided over by him, and in support of that contention counsel relies most strongly, if not exclusively, upon the report of the judiciary committee of the house of representatives upon house bill No. 74 of the legislative session of 1911, which bill afterwards became law as Act 84, S. L. 1911. In that report, which appears on page 262 of the house journal, session of 1911, the following language is used:

"This bill was drawn primarily in view of the reconstruction of the present judiciary building, for in that building provision will be made for each court being able to care for its own records. But it is a matter which has been favorably considered by the judges affected for some time. Under the proposed bill each judge will have power to appoint or remove his own clerk. Each clerk shall have charge of all the records pertaining to his respective court."

On page 380 of the senate journal for 1911 appears the re-

port of the judiciary committee of the senate on house bill No. 74, which reads in part as follows:

"This bill is in line with the policy of separating the clerks of the supreme court from the clerks of the circuit courts, is in accord with the ideas of the administration and is considered by this committee as a desirable measure."

There is nothing in the report of the senate committee, which was adopted, to indicate that the senate, when it acted on house bill No. 74, had any intention of providing in the bill that each judge of the circuit court should appoint his own clerk. The only fact that concurrently appears from a reading of the two reports is that the measure was enacted for the purpose of separating the clerks of the supreme court from the clerks of the circuit courts and enabling each of such courts, that is, the supreme court and the circuit court, to appoint its own clerks. This purpose was clearly effected, and as to this there is no question. We are unable to adopt the construction sought to be placed by counsel for petitioner on the statutory provision, as to do so would be to ignore and fail to give effect to the words "by the judge or judges thereof, as the case may be." It is a cardinal rule of statutory construction that the courts are bound, if possible, to give effect to all of its parts, and no sentence, clause or word shall be construed as unmeaning or surplusage if a construction can be legitimately found which will give force to and preserve all the words of the statute. *Lyman* v. *Maguire,* 17 Haw. 142, 145; *Attorney General* v. *Road Co.,* 2 Mich. 138; *State* v. *Fontenot,* 36 So. 630; *Hagenbuck* v. *Reed,* 3 Neb. 17; Opinion of the Justices, 39 Mass. 571. The use of the words in the alternative "by the judge or judges thereof, as the case may be," is obviously made necessary by the fact that in the circuit court of the first judicial circuit there are three judges, while in each of the other circuits there is but one judge. As we view it, the amendment of 1911 is substantially a provision that the clerks of the various circuit courts shall be appointed and removable by the judge or

judges of such courts respectively. It takes away from the chief justice of the supreme court the right to appoint any of the clerks of the first circuit court, segregates the duties of such clerks from those of the clerks of the supreme court, and, as applicable to the circuit court of the first judicial circuit, confers upon the judges of that court the power to appoint and remove as many clerks as may be necessary.

In our opinion the language of the statute is clear that in a circuit where there are more judges than one the clerks shall be appointed and removable by the judges of the court, acting conjointly. This view results also from a consideration of the legislation beginning with the judiciary act of 1892. Our view, that under the amendment of 1911 the clerks of the first circuit court are to be appointed by the judges of that court, acting conjointly, is evidently in accord with the construction placed upon the statutory provision by the judges of the first circuit court who were in office on July 1, 1911, the date that the amendatory act went into effect. This is evidenced by the fact that the commission issued to Mr. Harrison as a clerk of the first circuit court, dated July 1, 1911, and hereinabove set out in *haec verba,* was signed by the first, second and third judges of said court. While this contemporaneous construction which the law received soon after its enactment is not controlling, it is entitled to and should receive weight. 2 Lewis' Suth. Stat. Const., §472.

Assuming that this court may in a case where the language of a statute is ambiguous and its meaning is doubtful examine the legislative journals to ascertain the intent of the lawmaking body we are of the opinion that there is no such ambiguity in the act of 1911 as to justify or require a reference to the legislative records. The language used in the report of the judiciary committee of the house, "under the proposed bill each judge will have power to appoint or remove his own clerk," is not warranted by anything found in the bill itself, and if the legislature intended this they have signally failed to express such intention in the language used. Certainly the legislative record should

not be resorted to for the purpose of creating an ambiguity which does not exist upon a bare reading of the statute itself. As was said in the case of *Duncan* v. *Combs*, 131 Ky. 330, 115 S. W. 222, 224, 225:

"The statute, as enrolled, must be accepted as the law, and, where it is plain and unambiguous in its terms and not uncertain in its meaning, no necessity arises, in construing same, for calling in aid the journals of the respective houses or other extraneous matter. The journals might be used, as might other evidence, in construing an ambiguous statute, but not to give a statute, unambiguous in its terms, a meaning other than that which its language plainly imports." See also *Webber* v. *Ry. Co.*, 97 Fed. 140; *Water Commissioners* v. *Brewster*, 42 N. J. L. 125; *Lake County* v. *Rollins*, 130 U. S. 662, 670.

The vice of the contention advanced by counsel for petitioner, that in a circuit court where there are more judges than one each of such judges may appoint *his* clerk, is demonstrated by the language of the statute, which provides for the appointment of clerks, not of the circuit judges but of the circuit courts. It is provided in clear and unambiguous language that such clerks (that is, the clerks of the circuit courts) shall be "appointed and removable by the judge or judges thereof, as the case may be." As was said in the case of *The People* v. *Mobley*, 1 Scammon (Ill.) 214, 221, where a constitutional provision relating to the appointment of circuit court clerks was under consideration:

"If * * * the power of appointment should be regarded as personal to the judge it would necessarily attach to every judge immediately upon his appointment, and upon the happening of a vacancy in the office of judge the clerkships * * * would also become vacant; and upon the same principle, when circuit judges should change circuits, as by law they are authorized to do, the office of clerk would become vacant by such exchange * * * because the judge presiding in the circuit court of a county is for the time being the judge of that court; and if the clerk is the officer of the judge, and not of the court or law, he would have to be appointed upon every such exchange, and until

an appointment was made the administration of justice would be suspended. Such a construction * * * it is believed, is not warranted, and would in its consequences be fraught with great inconvenience to the public."

By Act 68 S. L. 1913 it is provided:

"Section 2. The several counties and city and county shall pay the expenses of their respective circuit courts and the salaries of the following officers of such courts, as required by such courts, to the extent of the following amounts," etc.

Provision is then made for the payment of salaries to eight clerks of the first circuit court, including a chief clerk and an assistant chief clerk. Of these eight clerks, whose salaries are so provided for by statute and directed to be paid by the city and county of Honolulu, the chief clerk and assistant chief clerk are and have been since the passage of the act assigned for duty in the outer or main office of the court, while of the remaining six two are assigned for duty in the respective court rooms of each of the three judges. At the argument counsel for petitioner took the position that under the act of 1911 the two clerks who are assigned for duty in the main office of the court might well be appointed by the three judges, acting conjointly, but then, as now, he contended that the clerks who are assigned for duty in the various court rooms are appointable and removable by the individual judges respectively. We find nothing in the statute which differentiates the manner of the appointment of the clerks employed in the particular court rooms from that of the clerks assigned for duty in the main office. In the well considered case of *State Treasurer's Settlement,* 70 N. W. 532, it is held that where authority is conferred by law upon three or more persons to execute a public trust (in that case the approval of the bonds of state depositories) the act of a majority is binding if all were assembled to deliberate or had notice and opportunity to be present, unless the statute expressly requires the concurrent action of all. See also Mechem on Public Officers, §572; *Merchant v. North,* 10 Ohio St. 252.

Applying the foregoing principles we are clearly of the opin-

ion that under the provisions of section 2314 R. L. 1915 the appointment or removal of clerks of the first circuit court requires the presence, actual or constructive, of all the judges and the concurrent action of a majority. From what has been said it follows that in our opinion the appointment of petitioner by the third judge of the first circuit court, acting alone, and likewise the removal of Harrison by said third judge, acting alone, were without authority of law and void.

Finally it is contended by petitioner that it is sufficient to enable him to maintain his action for compensation that he was a clerk *de facto* and that his title to the office cannot be questioned by respondent in this proceeding. This very question was presented and, we think, correctly decided in the case of *Dolliver* v. *Parks,* 136 Mass. 499, 500, where the court said:

"While the acts of an officer *de facto* are valid, so far as they concern the public or the rights of third persons who are interested in the things done, and his title to the office cannot be inquired into collaterally, yet when he sues in his own right, to recover fees which he claims are due him personally, by virtue of his office, his title to the office may be put in issue; and, to recover, he must show that he is an officer *de jure.* In such a suit no rights of the public or of third persons are concerned. The question of title to the office is directly raised; and he can recover no benefit to himself from an office he holds *de facto* only."

In *Stott* v. *City of Chicago,* 205 Ill. 281, the rule is laid down as follows: "An officer seeking to compel payment of compensation by mandamus must show that he is an officer *de jure* and not merely an officer *de facto.*"

Where a statute provides that an officer shall be appointed in a certain way, if such officer is appointed in a way different from that provided by statute, and acts, he cannot recover for his services as an officer *de facto. Phelon* v. *Granville,* 140 Mass. 386, 5 N. E. 269. The salary of an office follows the title. *Macfarlane* v. *Damon,* 8 Haw. 19, 38; *People* v. *Tieman,* 30 Barb. (N. Y.) 193, 195. When an individual claims by

action the office, or the incidents to the office, he can only recover upon proof of title. Possession under color of right may well serve as a shield for defense, but cannot, as against the public, be converted into a weapon of attack to secure the fruits of the usurpation and the incidents to the office. *Dorsey* v. *Smyth,* 28 Cal. 21, 26. The fact that the petitioner, Pringle, was acting in good faith in claiming the office does not give him the right to recover. *Comstock* v. *Grand Rapids,* 40 Mich. 397.

For the reasons stated the reserved question is answered in the negative.

*J. Lightfoot* for petitioner.

*F. W. Milverton* (*Thompson & Milverton* and *J. W. Cathcart, City and County Attorney,* on the brief) for respondent.

### DISSENTING OPINION OF QUARLES, J.

The paramount question raised by the demurrer to the return of the respondent involved in the question reserved to this court is, whether the third judge of the first circuit has power to dismiss and appoint clerks to transact the business of the court presided over by him "without the concurrence or acquiescence" of the first and second judges, or either of them, of said court. The law relating to the appointment of clerks of the supreme and circuit courts, as it has existed in this jurisdiction since 1892, is found in section 1680 R. L. 1905, and in Act 54 S. L. 1907, amending the said section, and is stated at length in the majority opinion. The statute was amended by Act 84 S. L. 1911 (now Sec. 2314 R. L. 1915), also set forth in the majority opinion. The solution of this question requires an interpretation or construction of that portion of the last statute which relates to the appointment of circuit court clerks, namely, "There shall be as many clerks of the circuit courts as may be necessary, appointed and removable by the judge or judges thereof, as the case may be." The majority opinion construes this provision as requiring the concurrent action of the three circuit judges in the first circuit in the matter of appointing and re-

moving clerks acting in the divisions over which the several judges preside. With that construction I am unable to agree, for the reasons which I will now state.

Section 14 R. L. 1915 provides that words in the singular or plural signify both singular and plural, and this provision follows a well recognized rule of statutory construction. "When necessary to give effect to the legislative intent, words in the plural number will be construed to include the singular, and words importing the singular only will be applied to the plural of persons and things" (36 Cyc. 1123). The intent of the legislature must be ascertained and given effect. This intent is gathered from the language of the statute giving to the words used their usual signification. "Every statute must be construed with reference to the object intended to be accomplished by it. In order to ascertain this object it is proper to consider the occasion and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new one; and the statute should be given that construction which is best calculated to advance its object, by suppressing the mischief and securing the benelts intended. For the purpose of determining the meaning, although not the validity, of a statute, recourse may be had to considerations of public policy, and to the established policy of the legislature as disclosed by a general course of legislation. * * * If the purpose and well ascertained object of a statute are inconsistent with the precise words, the latter must yield to the controlling influence of the legislative will resulting from the whole act" (36 Cyc. 1110, 1111). All statutes relating to the same subject should be consulted so as to ascertain and give effect to the legislative will. Looking at the statutes relating to the appointment of clerks for the courts as they existed prior to the amendment of section 1680 R. L. 1905, as amended by Act 54 S. L. 1907, by Act 84 1911, we find that the appointment and removal of clerks was made in part by the justices of the supreme court and in part by the circuit judges, and some of the clerks acting as clerks both in the supreme and

circuit courts, and we find it the established policy of the legislature to authorize and to permit each circuit judge to select, appoint and discharge the clerks acting before him or the department over which he presides. The principal object to be accomplished by the last amendment hereinabove quoted, as well as the evil to be remedied, was to separate the duties of the clerks in the supreme and circuit courts and to take from the justices of the supreme court all power or authority in the matter of appointing clerks in the circuit courts, to the end that each court would appoint and remove its own clerks, and such clerks would act only in the court for which appointed, except in the matter of filing papers in the outside circuits by the clerk of the supreme court acting *ex officio*. There is nothing in the statutory provision in question which shows an intent that the three judges in the first circuit should get together and appoint clerks to act in the several divisions, or before the several judges. There is nothing in the statute itself which shows an intent to overturn the settled policy, theretofore pursued, by the legislature, in the provisions which gave each judge in each circuit the power to appoint and remove his own clerk and assistant clerk. The provision now under consideration should not be so construed that the phrases "appointed and removable by the judge or judges thereof, as the case may be," mean that the three judges in the first circuit must get together and act as a body in order to appoint or remove a clerk to act before one of them. Such construction ignores the rules of construction heretofore adverted to and enunciated in Cyc. and in section 14 R. L. 1915; goes beyond the provisions of the statute in question; and, by the rule announced in the majority opinion of this court, requires certain matters of court business to be transacted by the three judges of the first circuit, acting conjointly, contrary to the entire scheme under which the judges act in the said circuit. Chapter 131 R. L. 1915, under the heading "Circuit Courts," provides the mode and manner in which circuit courts transact business in this Territory. By sections 2263, 2265 and 2277, found in

said chapter, it is especially provided that where two judges or more act in the same circuit each shall act separately, whether in open session of court or in transacting work at chambers, and the whole scheme is for the judges in the first circuit to act separately and independently of each other, so that, in fact, in the first circuit, instead of having one circuit court, we virtually have, in effect, three circuit courts. "It is an established rule in the construction of statutes, that a subsequent statute, treating a subject in general terms, and not expressly contradicting the provisions of a prior act, shall not be considered as intended to affect more particular and positive provisions of the prior act, unless it be absolutely necessary to do so in order to give its words any meaning" (*Fosdick* v. *Perrysburg,* 14 Ohio St. 472).

The petitioner contends with much force and reason that under the statutory provision being considered each circuit judge has power to appoint and remove the clerks who transact the business of the court, so far as the same is presided over by him. The respondent contends with much earnestness and force that under said provision it requires the joint or concurring action of the three judges to appoint or remove a clerk. We thus have two constructions of this statutory provision by the parties to this proceeding, each differing from the other. These divergent views—neither without grounds therefor—indicate that such provision may mean one of two things, each differing from the other; in other words, that the statute is ambiguous. We must therefore consider the rules for statutory construction under like circumstances. "An ambiguity exists in a statute where it is susceptible of two or more different meanings or applications without doing violence to its terms" (36 Cyc. 1118. See also Lewis' Suth. Stat. Const., Sec. 310). The court should look at the pre-existing law upon the same subject so as to ascertain the changes contemplated by the new statute and should consider the history of the enactment of the statute (*Bank* v. *Collector,* 3 Wall. 495; *Texas & Pac. Ry. Co.* v. *Interstate Com. Com.,* 162 U. S. 197; *Ex parte Crow Dog,* 109 U. S. 556; *Bates* v.

*Clark,* 95 U. S. 204; *Flanders* v. *Merrimack,* 48 Wis. 567; *Solomon* v. *Commissioners,* 41 Ga. 157). The reason and purpose of the new act are considerations of great weight (*Smythe* v. *Fiske,* 23 Wall. 374). The proceedings of the legislature, especially committee reports made during the progress of the bill through the legislature, may be considered to ascertain the intent of the legislature in enacting it (*Church of the Holy Trinity* v. *U. S.,* 143 U. S. 457; *Buttfield* v. *Stranahan,* 192 U. S. 470; *Blake* v. *National Banks,* 23 Wall. 307; *Hill's Adm'r.* v. *Mitchell,* 5 Ark. 648; *Edger* v. *Board of Commissioners,* 70 Ind. 331; *Division of Howard Co.,* 15 Kan. 154; *Fosdick* v. *Perrysburg,* 14 Ohio St. 472). A contemporaneous construction of the terms of a statute by the legislative or executive department is of high value in determining the intention of the legislature (*U. S.* v. *Gilmore,* 8 Wall. 330; *Philadelphia etc. R. R. Co.* v. *Catawissa R. R. Co.,* 53 Pa. St. 20; *Wright* v. *Forrestal,* 65 Wis. 341, 348). "By one of the most familiar rules for statutory construction, we may and should reject any meaning that may be attributed to the statutes which would lead to an absurd or unreasonable result. It is often said that the true rule to be observed in a situation like the one before us is to look to the whole and every part of the law, to the intent apparent from the whole, to the subject matter, to the effect and consequences, to the reason and spirit, and thereby ascertain the ruling idea present in the legislative mind at the time of its enactment, and then, if the manifest purpose of the lawmakers can thereby be reasonably spelled out of the words they used to express it, to give effect to such purpose, though the meaning thus adopted be quite contrary to the literal sense of the words. *Ogden* v. *Glidden,* 9 Wis. 46; *Harrington* v. *Smith,* 28 Wis. 43; *Hartford* v. *N. P. R. Co.,* 91 Wis. 374. When the legislative will, attempted to be expressed in a statute, is worked out in the manner indicated, it is as much a part of the law and as binding on courts as if literally expressed therein. *State ex rel. Heiden* v. *Ryan,* 99 Wis. 123; *People ex rel. Att'y Gen.* v.

*Utica Ins. Co.,* 15 Johns. 358; *Indianapolis & St. L. R. Co.* v. *Horst,* 93 U. S. 300" (*Wisconsin Industrial School* v. *Clark County,* 103 Wis. 651, 659).

As shown in the majority opinion, it appears that when house bill 74, which after its enactment became Act 84 S. L. 1911, was pending in the legislature, that the judiciary committee in its report on the bill expressly declared that under the provisions of the bill each judge would have the appointment of his own clerks. There is absolutely nothing in the history of the passage of the bill, as shown by the journals of the house and the senate, showing a contrary opinion, and this construction is in absolute harmony with the pre-existing law, with the settled policy of permitting each circuit judge to select his own clerks, and is in line with the rules of construction shown in the authorities hereinbefore cited. This settled policy is a wise and beneficent one. The relations between a judge and the clerks who record and transact the clerical business of the court presided over by him are somewhat of a confidential nature and the utmost respect and confidence should exist on the part of all of them. This settled policy is evidence that the legislature deemed it best, to procure the best service before the circuit courts in a clerical way, to permit each judge to have the power of appointing and dismissing his own clerks, and this power certainly conduces to the betterment of the service; and I cannot bring my mind to assent to the overturning of this settled policy by the phrases quoted from Act 84 S. L. 1911. In my opinion the use of the word "judge" in the plural was for the reason that in one circuit there are three judges while in the others there is only one, and for the purpose of making the language rhetorical and not for the purpose of requiring conjoint or concurrent action by the judges in the first circuit.

It is well perhaps to call attention to another fact, namely, that under the statute as it now exists the provision incorporated into the statute by Act 54 S. L. 1907, to wit, whereby the clerk of the judiciary department had control of the central office in

In re Pringle, 22 Haw. 557.

Honolulu and all moneys, records and business in the central office, was repealed and under the present law there is no provision for the outside office, spoken of in the majority opinion, nor has the legislature seen fit, in the statute in question, or in any other statute to which my attention has been called, to prescribe the mode or manner in which circuit judges shall perform their duties except the statute enacted since the controversy herein arose relating to the appointment of court stenographers, and that statute has nothing to do with the solution of any question involved here. The policy of the legislature relating to the appointment of circuit court clerks is to be gathered from the acts relating to the appointment of clerks at the time, and prior to, the appointment of petitioner, and the history of their enact-. ment. Hence, if the rule is established that in the transaction of any of their business, except in the matter of appointing stenographers and interpreters, they must get together and act concurrently, it will be by judicial decision and not by any legislative rule heretofore enacted.

In my opinion the demurrer to the return of the respondent to the alternative writ should be sustained and the reserved question answered in the affirmative.