In the Matter of the Application of MURRAY HULBERT for a Peremptory Mandamus Order against CHARLES L. CRAIG, as Comptroller of the City of New York.

Supreme Court, New York Special Term, January 8, 1925.

Municipal corporations — officers — application for peremptory mandamus order to compel payment of petitioner's salary as president of board of aldermen of city of New York — petitioner, while president of said board, was appointed by Governor as member of Finger Lakes State Parks Commission, pursuant to Public Lands Law, art. 10 — petitioner, as president of board of aldermen, precluded by Greater New York charter, § 1549, from holding office under government of State — Commissioners of Finger Lakes State Parks Commission are officers of State within meaning of Public Officers Law, § 2 — petitioner vacated office of president of board of aldermen of city of New York, as matter of law, within meaning of Greater New York charter, § 1549 — petitioner not entitled to salary as de facto officer — board of aldermen of city of New York without power to determine petitioner's tenure of office — application denied.

The petitioner, who, while president of the board of aldermen of the city of New York, was appointed by the Governor as a member of the Finger Lakes State Parks Commission, pursuant to article 10 of the Public Lands Law, as added by chapter 88 of the Laws of 1924, and filed his oath of office, will be deemed to have vacated, as a matter of law, the presidency of the said board by reason of section 1549 of the Greater New York charter, which provides that any city official who shall during his term of office accept " any other civil office of honor, trust or emolument under the government of the United States (except commissioners for the taking of bail, or register of any court), or of the State * * * shall be deemed thereby to have vacated any office held by him under the city government," since the Commissioners of the Finger Lakes State Parks Commission are officers of the State within the meaning of section 2 of the Public Officers Law.

Accordingly, the petitioner's application for a peremptory mandamus order to compel the payment of his salary as president of the board of aldermen of the city of New York during the period he was a member of the Finger Lakes State Parks Commission will be denied.

Nor is the petitioner entitled to his salary as a *de facto* officer, since his title to the office of president of the board of aldermen of the city of New York is void, as a matter of law.

The board of aldermen, though it may pass upon the qualifications, elections and returns of its members, is without power to determine the tenure of petitioner's

18

office, since the office which petitioner claims not only entitles its holders to membership on the board of aldermen, but also on the board of estimate and apportionment of the city of New York and to a statutory salary, over which the board has no control.

APPLICATION for a peremptory mandamus order.

*Davies, Auerbach & Cornell* [*Charles H. Tuttle, Carl E. Peterson* and *Murray C. Bernays,* of counsel], for the petitioner.

*Charles L. Craig,* Comptroller of the City of New York, in person.

PROSKAUER, J.:

The petitioner, duly elected president of the board of aldermen of the city of New York, seeks mandamus against the comptroller to compel payment of salary. The comptroller sets up that the petitioner, after appointment by the Governor, with the advice and consent of the Senate, on April 9, 1924, filed his oath of office as a member of Finger Lakes State Parks Commission and that thereby, under the Greater New York charter (§ 1549), he instantly vacated his city office. Section 1549 provides that any city official who shall during his term of office accept " any other civil office of honor, trust or emolument under the government of the United States (except commissioners for the taking of bail, or register of any court), or of the state * * * shall be deemed thereby to have vacated any office held by him under the city government."

The petitioner concedes that he accepted a civil office under the government of the State, but contends that in section 1549 the words " or of the State " relate back to the words " civil office of honor, trust or emolument;" so that the statute in effect reads, " any other civil office of honor, trust or emolument of the State; " that the prohibition is thus restricted to a " State " as distinguished from a " local office; " that the office which he accepted was " local " and that, therefore, he did not transgress the statute. The comma after the parenthesis containing the words " except commissioners for the taking of bail," etc., is the chief reliance of petitioner's counsel in this contention. I cannot impute to the Legislature an intention so to refine. The presence of a comma after a long parenthesis, where more exact usage would justify its absence, is not infrequent. The two phrases beginning with " of " clearly modify the phrase " under the government." The prohibition is against holding office under the government of the United States or under the government of the State of New York.

Even if the statute is read, however, as though it prohibited the holding of an " office of the State," there is nothing to support the petitioner's contention that such phrase means a " State office as distinguished from a " local office." If the Legislature had

intended to restrict the prohibition to the holding of what is technically a " State office " under section 2 of the Public Officers Law, it would have used language more appropriate to that end. An office of the State may be a " State office " or a " local office." The Commissioners are " officers of the State " under fair interpretation of those words. They are appointed by the Governor with the advice and consent of the Senate. Their powers are restricted to no " political subdivision or municipal corporation of the State." (Pub. Off. Law, § 2.) There is no erection of a political subdivision such as " The Metropolitan Police District," considered in *N. Y. & Harlem R. R. Co.* v. *Mayor* (1 Hilt. 562) and *People* v. *Pratt* (50 Hun, 454), cited by petitioner. The Commission has power to acquire parks in a geographical, not a political section, known as the Finger Lakes region. It has the right under section 115 (Laws of 1924, chap. 88) to maintain and control real and personal property without restriction to place and to devote the net income thereof to its park purposes. It is required by section 116 to make an annual report to the Legislature with a detailed fiscal statement and to make verified report to the State Comptroller quarterly of its receipts and expenditures. It has control of State appropriations; it is given the power of eminent domain through the conferring upon it of the powers vested in the State Conservation Commission by section 4 of chapter 693 of the Laws of 1923. These attributes of office and the fact that the statute itself (Laws of 1924, chap. 88) is made article 10 of the Public Lands Law indicate the intent of the Legislature to regard the Commissioners as " officers of the State."

Moreover, these Commissioners meet the requirements of the technical definition of a " State officer." By section 2 of the Public Officers Law, a State officer (in so far as here material) is one " authorized to exercise his official functions throughout the entire State, or without limitation to any political subdivision of the state; " a local officer is " every officer of a political subdivision * * * of the state, and every officer limited in the execution of his official functions to a portion only of the state." As above stated, the jurisdiction of the Commission to manage lands is confined to no political or even geographical section of the State. The only limitation upon the locality of the exercise of its powers is that the parks it maintains are to be generally in what is known as the Finger Lakes region. Its functions as to other property which it may control and maintain may be exercised throughout the State. The oath of office of petitioner and other such Commissioners was filed in the office of the Secretary of State, as required by section 10 of the Public Officers Law for " State officers," and not in a county

clerk's office, as required therein for " local officers." Further, by section 3 of the Public Officers Law, the incumbent of a local office must be a resident " of the political subdivision or municipal corporation of the State for which he shall be chosen." The statute provides that one Commissioner must be a member of the then Board of Commissioners of the Watkins Glen Reservation, resident in the county of Schuyler, and one a member of the then Board of the Enfield Falls Reservation, resident in the county of Tompkins (§ 111). There is no requirement that any Commissioner should reside within the reservation itself or the vaguely described " Finger Lakes region."

The Public Lands Law by article 12 creates a similar board for the Mohansic Lake Reservation and by article 9 for the State Reservation at Niagara. Membership on these and similar boards has never been confined to residents of the areas directly affected. The Legislative Manual for 1924 shows that on the Finger Lakes State Parks Commission, the Long Island State Park Commission, the Niagara Reservation Commission and the New York section of the Board of Commissioners of the Palisades Interstate Park, were many members residing outside of the locality directly affected. The practical difficulties of restricting membership on a commission to administer a park, located in a sparsely settled region, to residents of such locality are almost insurmountable and the public records disclose that over a long period of years the Governors of New York have not regarded themselves as bound by any such limitation. Judge Hiscock, in *People ex rel. Werner* v. *Prendergast* (206 N. Y. 405, 411), quotes with approval that " ' the practical construction of a statute by those for whom the law was enacted, or by public officers whose duty it is to enforce it, acquiesced in by all for a long period of time, is of great importance in its interpretation in a case of serious ambiguity.' "

This practical construction supports the plain meaning of the statute itself that such commissioners are not required to reside in the local area and are not " local officers." They are technically " State officers; " they are certainly " officers of the State " and " officers under the government of the State."

On any construction of section 1549 of the Greater New York charter the petitioner, therefore, has vacated the office of president of the board of aldermen.

I am keenly aware of the hardship worked by this conclusion. By accepting membership on this Commission petitioner assumed a public duty which brought no gain to him. He acted unselfishly and with public spirit. But the drastic mandate of the Greater New York charter, section 1549, permits the court to be affected

by no such considerations. It reserved for the city the undivided public service of its officers. It is self-executing. When an officer transgresses its provisions he "shall be deemed thereby to have vacated" his city office. As stated by DANFORTH, J., in *People ex rel. Kelly* v. *Common Council of Brooklyn* (77 N. Y. 503, 510): "The office was and is as vacant as if Mr. O'Reilly had never been born; his removal is as complete as if caused by death. When he accepted the new office the other ceased to have an incumbent."

It is urged that, even if petitioner vacated the office, since he performed its duties he is entitled to salary as a *de facto* officer, and as a corollary, that the comptroller as an auditing officer could not refuse payment. Some support is found for this contention in *dicta* and decisions in some jurisdictions. (*Reynolds* v. *McWilliams*, 49 Ala. 552; *Behan* v. *Davis*, 3 Ariz. 399; *Friedman* v. *Horning*, 128 Mich. 606; *Cousins* v. *Manchester*, 67 N. H. 229; *Erwin* v. *Jersey City*, 60 N. J. L. 141; *McArt* v. *Town of Belleville*, 97 id. 396; *Elledge* v. *Wharton*, 89 S. C. 113; *Peterson* v. *Benson*, 38 Utah, 286; *State ex rel. Elliott* v. *Kelly*, 154 Wis. 482; *State ex rel. Kleinsteuber* v. *Kotecki*, 155 id. 66.) The overwhelming weight of authority in other jurisdictions is against it. (*Bennett* v. *U. S.*, 19 Ct. Cl. 379; *Romero* v. *U. S.*, 24 id. 331; *Pack* v. *U. S.*, 41 id. 414; *Northup* v. *U. S.*, 45 id. 50; *Austill* v. *U. S.*, 58 id. 232; *Hill* v. *Rector*, 161 Ark. 574; *Stevens* v. *Campbell*, 67 id. 484; *Bannerman* v. *Boyle*, 160 Cal. 197 (*semble*); *Norton* v. *Lewis*, 34 Cal. App. 621, 624; *Anderson* v. *Lewis*, 29 id. 24, 26; *Drach* v. *Leckenby*, 64 Colo. 546 (*semble*); *People ex rel. Dineen* v. *Bradford*, 267 Ill. 486 (*semble*); *Bailey* v. *Turner*, 108 Kan. 856; *Garfield* v. *Crocker*, 63 id. 272; *Eubank* v. *Montgomery County*, 127 Ky. 261; *Ducharme* v. *City of Biddeford*, 110 Maine, 6 (*semble*); *Phelon* v. *Granville*, 140 Mass. 386; *State ex rel. Egan* v. *Schramm*, 82 Minn. 420; *Sheridan* v. *St. Louis*, 183 Mo. 25; *Matthews* v. *Supervisors*, 53 Miss. 715; *State ex rel. Cutts* v. *Hart*, 56 Mont. 571; *Meagher* v. *County of Storey*, 5 Nev. 244; *People ex rel. Morton* v. *Tieman*, 30 Barb. 193; *Dolan* v. *Mayor*, 68 N. Y. 274 (*semble*); *Jones* v. *Easton*, 4 Penn. Dist. Ct. 509; *Comm. ex rel. Bowman* v. *Slifer*, 25 Penn. 23, 31; *Matter of Pringle*, 22 Haw. 557 (*semble*); *Hannigan* v. *McLeod*, 21 D. L. R. 509.)

The decisive authorities in New York support the rule stated in *People ex rel. Morton* v. *Tieman* (30 Barb. 193, 195) by ALLEN, J., as follows: "The salary and fees are incident to the title and not to the usurpation and colorable possession of an office. An officer *de facto* may be protected in the performance of acts done in good faith in the discharge of the duties of an office under color of right, and third persons will not be permitted to question the validity

of his acts by impeaching his title to the office. * * * It does not follow that a right can be asserted and enforced on behalf of one who acts merely under color of office without legal authority, as if he were an officer *de jure*. When an individual claims by action the office, or the incidents to the office, he can only recover upon proof of title. Possession under color of right may well serve as a shield for defense, but cannot, as against the public, be converted into a weapon of attack, to secure the fruits of the usurpation and the incidents of the office. * * * Assuming all that is claimed by the relator, and that the mayor acts ministerially in countersigning the comptroller's warrant, the right of the relator to call upon him to act depends solely ·upon his title to the office. The title is not, therefore, collaterally questioned, but is directly in issue, and is the only material fact in the case."

In *Dolan* v. *Mayor* (68 N. Y. 274, 279) ANDREWS, J., citing this case with approval, writes: " It is the settled doctrine in this State, that the right to the salary and emoluments of a public office, attach to the true and not to the mere colorable title, and in an action brought by a person claiming to be a public officer for the fees or compensation given by law, his title to the office is in issue, and if that is defective and another has the real right, although not in possession, the plaintiff cannot recover. Actual incumbency merely gives no right to the salary or compensation."

That there is here no adverse claimant cannot change the principle involved. In *People ex rel. Henry* v. *Nostrand* (46 N. Y. 375, 382) one Henry vacated his office as road commissioner· by qualifying as sheriff. There was no adverse claimant. He sought by mandamus to compel the payment of certain moneys. CHURCH, Ch. J., writes: " When a person sets up a title to property, by virtue of an office and comes into court to recover it, he must show an unquestionable right. It is not enough that he is an officer *de facto*, that he merely acts in the office; but he must be an officer *de jure*, and have a right to act."

Of the cases chiefly relied on by the petitioner, *Morris* v. *People* (3 Den. 381) (decided in the Court for the Correction of Errors by a court divided ten to nine) " is not a parallel case, for the Legislature made provision for the payment of Lynch after the unauthorized services were performed, which the court held it had the right to do * * *. His payment was provided for, notwithstanding the services were unauthorized when performed. (*Meagher* v. *County of Storey*, 5 Nev. 244, 251.) Other cases hold similarly. (*People ex rel. Kingsland* v. *Bradley*, 64 Barb 228 *Melick* v. *Williamsport*, 162 Penn. St. 408.)

*People ex rel. Andrus* v. *Town Auditors* (33 App. Div. 277)

in so far as it tends to support petitioner's contention, is in square conflict with *People ex rel. Grogan* v. *Glass* (19 App. Div. 454), decided by the same court about a year earlier (which is not referred to in the later opinion), and with the Court of Appeals cases. *Dolan* v. *Mayor* (*supra*) and *Demarest* v. *Mayor* (147 id. 203) hold on their facts merely that the city is protected by payment to a *de facto* officer.

In *Greene* v. *Knox* (175 N. Y. 432) the court held that a taxpayer's action would not lie to restrain the payment of salaries to public officers holding presumptively valid appointments and that resort to quo warranto was necessary to test the valid title to the office. The court there concludes that "Whenever there is an actual contest over a title to office that is regular on its face and presumptively valid, the incumbent is entitled to his day in court on the main question, before the payment of his salary can be interdicted, and, as a general rule, that can only be done properly in the action of quo warranto in a court of law where the issues of fact can be decided by a jury."

That this has no application to the case at bar is apparent from the opinion of DANFORTH, J., in *People ex rel. Kelly* v. *Common Council* (77 N. Y. 503): "The moment he accepted the new office the old became vacant. His acceptance of the one was an absolute determination of his right to the other, and left him 'no shadow of title, so that neither quo warranto nor a motion was necessary. * * * It was not a case, therefore, for quo warranto, for that will lie only when the party proceeded against is either a *de facto* or *de jure* officer in possession of the office, and an office that is vacant is in possession of no one. Besides, such writ issues when facts are in dispute, and one object aimed at is to ascertain the facts; here no fact is disputed, but a mere question of law."

Similarly here there is no question of fact; the petitioner's title is void as a matter of law.

Finally the petitioner contends that inasmuch as the president of the board of aldermen is a member of the board of aldermen, that body is the sole judge of his tenure. I do not pass upon the question whether the board can permit petitioner to continue to sit as a member; but the office he claims entitles its holder not merely to such membership, but also to membership on the board of estimate and apportionment and to a statutory salary. Over these aspects of the office the board of aldermen has no control.

And certainly the court is not bound to enforce an illegal claim because another tribunal may have some power of determination. *Sheridan* v. *St. Louis*, 183 Mo. 25; *State ex rel. Cutts* v. *Hart*, 56 Mont. 571.)

In *People ex rel. Sherwood* v. *Board of Canvassers* (129 N. Y. 360, 373) EARL, J., writes: "It is undoubtedly true that the courts cannot by quo warranto try the title to a legislative office. But this is not such a case. Here the relator comes into court and asks its aid to clothe him with apparent title to an office, and by its affirmative action, to remove obstacles which stand in his pathway in his proposed intrusion into the office; and upon the undisputed facts, the court is able to see that he is ineligible, and it simply determines that it will not aid him; and in making such determination, it in no way infringes upon the jurisdiction confided to the Senate. It simply exercises a jurisdiction which he has invoked."

In *State ex rel. Cutts* v. *Hart* (56 Mont. 571, 577) Mr. Justice HURLY said: " There can, of course, be no question that under the Constitution, plenary power is lodged in each house to judge of the qualifications, elections and returns of its membership; nevertheless, when it appears that such body has proceeded in an unconstitutional manner, the courts are not permitted to lend their assistance in aid of one who sues for his emoluments, basing his rights upon such action."

Since on undisputed facts this petitioner vacated his office as a matter of law, and is not the *de jure* incumbent, he cannot claim the aid of the court to obtain its emoluments. While the public will be protected with respect to the acts performed by him under color of title, he can secure nothing from his mere *de facto* tenure.

Application for mandamus denied.