STATE EX REL. CUTTS, RESPONDENT, *v.* HART, STATE
TREASURER, APPELLANT.

(No. 4,051.)

(Submitted November 15, 1919.  Decided December 10, 1919.)

[185 Pac. 769.]

*Mandamus—Legislature—Office and Officers—Vacancies—Appointment—Constitution—Compensation—De Facto and De Jure Officers.*

Legislature—Vacancy—Appointment—Constitution.
   1.  *Held,* on *mandamus,* that section 45, Article V, of the Constitution, provides the only means for filling a vacancy caused by death or resignation of a member of either house of the legislative assembly, to-wit, by an election called for that purpose, and that therefore the governor had no power to fill the vacancy by appointment.

Office—Filling Vacancy—Constitution—Statutes.
   2.  Where the Constitution provides the mode for filling an office made vacant, the provision of section 423, Revised Codes, that the governor must fill the vacancy by granting a commission to expire at the end of the next legislative assembly or at the next election, does not apply.

Same—Compensation—Incidental to Right to Hold Office.
   3.  The right of a public officer to compensation for the performance of duties imposed upon him by law does not rest upon contract, but is incidental to the right to hold office.

Same—*De Facto* Officer—Definition.
   4.  A *de facto* officer is one in possession of an office and discharging its functions under color of authority or of title derived from irregular, informal or defective appointment or election.

Same—*De Facto* Officer—Compensation.
  5. A *de facto* officer cannot recover the compensation attached to the office, and while his acts are valid so far as they concern the public or the rights of third persons, when he sues in his own right to recover salary due him by virtue of the office, he must show that he is an officer *de jure.*

Same.
  6. *Obiter:* One who has occupied an office to which he is ineligible cannot maintain an action for the salary thereof.

Same—Manner of Appointment—Disregard of Statute—Effect.
  7. *Obiter:* Where a statute provides that an officer shall be appointed in a certain way, and he is appointed in a different one, he cannot recover salary as a *de facto* officer.

Legislature—Vacancy—Illegal Appointment — Compensation — Power of Courts.
  8. Though, under the Constitution, each house of the legislative assembly has plenary power to judge of the qualifications, elections and returns of its membership, the courts are not for that reason required to aid one who was appointed to a vacancy in one of the houses contrary to a provision of the Constitution, in his endeavor to secure the emoluments attached to the office.

*Mandamus*—Lies, When.
  9. To obtain the aid of a court by *mandamus,* relator must establish a clear legal right in himself to the relief prayed for, and a violation of duty by the person or officer sought to be coerced.

Legislature—Illegal Appointment—Compensation—*Mandamus*—Improper Remedy.
  10. *Held,* that relator having acquired his membership in the house of representatives by appointment instead of by election as provided by the Constitution, he was not under the above rule, entitled to the aid of a writ of *mandamus* to compel the state treasurer to pay him the emoluments attached to the office.

*Appeal from the District Court of Lewis and Clark County; W. H. Poorman, Judge.*

*Mandamus* proceedings by the State on the relation of William Cutts against H. L. Hart, as state treasurer, to compel payment of a warrant issued to relator in payment of mileage and per diem as member of the house of representatives pursuant to appointment to fill a vacancy caused by death. Reversed, with directions to dismiss the proceeding.

Cause submitted on briefs of Counsel.

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for Appellant.

*Messrs. Galen & Mettler* and *Mr. E. G. Toomey,* for Respondent.

MR. JUSTICE HURLY delivered the opinion of the court.

Relator instituted *mandamus* proceedings against H. L. Hart, state treasurer, to enforce payment of a warrant issued to relator as and for salary as a member of the house of representatives of the fifteenth session.

On or about February 7, 1917, Jerry J. Flannigan, a member of the house, elected from Silver Bow county, died, [1] and thereupon the governor issued to relator a commission to fill the vacancy caused by the death of Flannigan, no election having been had to fill the vacancy, and on such date relator was seated as a member of such house and continued as a member thereof. At the close of the session there was issued to him a warrant in payment of his per diem and mileage, pursuant to a resolution of the house, payment of which was refused by the state treasurer, defendant herein. The facts are uncontroverted by the defendant. Judgment was granted in favor of relator in the district court.

Section 9, Article V, of our Constitution, provides: " *   *   * Each house   *   *   * shall judge of the elections, returns and qualifications of its members."

"Sec. 45. When vacancies occur in either house, the governor or the person exercising the functions of the governor shall issue writs of election to fill the same."

Section 420 of the Revised Codes provides: "An office becomes vacant   *   *   * on the death of the incumbent."

"Sec. 422. Whenever a vacancy   *   *   * occurs in either house of the legislative assembly, the governor must at once issue a writ of election to fill, such vacancy.

"Sec. 423. When any office becomes vacant, and no mode is provided by law for filling such vacancy, the governor must fill such vacancy by granting a commission to expire at the end of the next legislative assembly or at the next election by the people."

It is contended by respondent that Flannigan having died during a session of the legislature and there being no mode provided by the Code for filling the vacancy during the time

which would elapse before the election could be had, these sections, and particularly section 423, authorized an appointment by the governor, which view was adopted by the house.

Section 29, Article III, of the Constitution provides: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." In our view, the Constitution (Art. V, sec. 45, *supra*), provides the only means for filling a vacancy occurring by death or resignation of a member. The Constitution being mandatory as to the subjects on which it speaks (sec. 29, *supra*), and having provided that when vacancies occur in either house, the governor shall issue writs of election to fill the same, the people retained in themselves, and in themselves alone, the power to fill vacancies in the legislative bodies. There being, by the **[2]** terms of the constitutional provision above referred to, a "mode provided by law for filling such vacancy," the provisions of the statute (sec. 423) do not apply here; and relator's appointment having been made contrary to the provisions of the Constitution, he was at most a *de facto* officer.

The right of a public officer to compensation for the perform- **[3]** ance of duties imposed upon him by law does not rest upon contract, but is incidental to the right to hold office. (*McGillic* v. *Corby,* 37 Mont. 249, 17 L. R. A. (n. s.) 1263, 95 Pac. 1063; 22 R. C. L., p. 525 *et seq.*)

An officer *de facto* has been said to be one in possession of **[4]** an office and discharging its functions under color of authority or of title derived from irregular, informal or defective appointment or election. (22 R. C. L., p. 523, and cases cited.) **[5]** It is a generally recognized rule that a *de facto* officer cannot recover the compensation annexed to the office, and that, while the acts of such officer are valid so far as they concern the public or the rights of third persons, when he sues in his own right to recover fees or salary due him by virtue of the office, he must show that he is an officer *de jure*. (*People* v. *Hopson,* 1 Denio (N. Y.), 574; *People* v. *Howe,* 177 N. Y. 499, 66 L. R. A. 664, 69 N. E. 1114; *People* v. *Potter,* 63 Cal. 127;

*Christian* v. *Gibbs,* 53 Miss. 314; *Vicksburg* v. *Groome* (Miss.), 24 South. 306; *McCue* v. *Wapello County,* 56 Iowa, 698, 41 Am. Rep. 134, 10 N. W. 248; *Samis* v. *King,* 40 Conn. 298; *Meagher* v. *Storey County,* 5 Nev. 244; *Dillon* v. *Myers,* Brightly N. P. (Pa.) 426; *Cobb* v. *Hammock,* 82 Ark. 584, 102 S. W. 382; *Eubank* v. *Montgomery County,* 127 Ky. 261, 128 Am. St. Rep. 340, 16 Ann. Cas. 483, 105 S. W. 418; *York* v. *St. Paul,* 62 Minn. 250, 64 N. W. 565.)

In *State ex rel. Boulware* v. *Porter,* 55 Mont. 471, 178 Pac. 832, this court said: "It is nevertheless the contention that when he [a public officer] comes into court to enforce the payment of compensation on account of his services, he must assume the burden of showing that he is in right as well as in fact a member of the house. We agree with this contention, for it is the general rule that the emoluments follow the legal title to the office."

While there are exceptions to these rules, this case is not within any of them. On the general subject of actions brought by a *de facto* officer to recover the salary annexed to the office, see Constantineau on the "De Facto Doctrine," sections 236 and 237, and cases cited. (Throop on Public Officers, sec. 510; Mechem on Public Officers and Offices, sec. 331; 22 R. C. L., p. 321 *et seq.*)

As indicating some of the points directly passed upon in the cited cases, the following brief references are given:

One who has occupied an office to which he is ineligible is not [6] entitled to maintain an action for the salary thereof. (*Vicksburg* v. *Groome* (Miss.), 24 South. 306.)

When a statute provides that an officer shall be appointed in [7] a certain way, if he be appointed in a manner different from that provided by statute, held, he cannot recover as a *de facto* officer. (*Phelon* v. *Grenville,* 140 Mass. 386, 5 N. E. 269.)

In *Sheridan* v. *St. Louis,* 183 Mo. 25, 2 Ann. Cas. 480, 81 S. W. 1082, the facts were very similar to those here involved. One Vogel was elected as a member of the house of delegates of the city of St. Louis, defeating Sheridan, the plaintiff above

named. When the house organized, a contest was initiated
against Vogel on the ground that he had been convicted of
crime and hence was ineligible. Upon these charges, he was
unseated and Sheridan, having received the next highest num-
ber of votes, was declared entitled to the seat by a vote of the
house, and, during the session, the auditor was directed to draw
him a warrant for the salary amounting to $600. After hold-
ing that under the statute of Missouri, Sheridan was not duly
elected, notwithstanding the provision of the city charter as
follows: "Each house  *  *  *  shall be the sole judge of the
qualification, election and returns of its own members," *etc.,*
the court held that, it appearing that Sheridan had been de-
clared elected contrary to the provisions of law, his suit for
salary could not be maintained regardless of the action of the
house in seating him and authorizing payment of his salary.
(See, also, Dillon on Municipal Corporations, 5th ed., sec. 381,
and note thereto.)

Suppose that one, not an American citizen and who has not
even declared his intention to become one, should be a success-
ful candidate at the polls for a seat in the legislative assembly
and seated despite his noncitizenship; what right could be shown
in his favor, should he bring *mandamus* to recover his salary if
his petition disclosed on its face that he was not a citizen? Or
suppose that upon the candidacy of such person, proceedings
should be brought to prevent his name being placed upon the
election ballots; can it be doubted that the court could restrain
the placing of the same thereon, when his ineligibility was made
to appear, even though, if elected, the legislature might pos-
sibly seat him as a member?

*People ex rel. Sherwood* v. *State Board of Canvassers,* 129
N. Y. 360, 14 L. R. A. 646, 29 N. E. 345, involved the question
whether one who was ineligible under the Constitution of New
York to a seat in the legislative assembly, and who had received
a majority or plurality in his candidacy for election to the as-
sembly, could compel the state board of canvassers by *manda-
mus* to issue to him a certificate of election. The court said:

"But it is claimed that we have no jurisdiction to determine that the relator was ineligible to the office of senator, because the Constitution, in section 10 of Article 3, provides that each house of the legislature 'shall be the judge of the elections, returns, and qualifications of its own members.' The courts cannot interfere with this jurisdiction of the senate. Whatever may be determined here or elsewhere as to the election or qualifications of the relator, or the result of the election in the twenty-seventh senatorial district, when the senate convenes, and not until then, it will have absolute jurisdiction of the whole subject, and may determine which of the two persons claiming seats therein was duly elected and qualified to sit therein; and it may determine that one was ineligible and that the other was not elected, and that thus there is a vacancy in that district calling for a new election. It is undoubtedly true that the courts cannot by *quo warranto* try the title to a legislative office; but this is not such a case. Here the relator comes into court and asks its aid to clothe him with apparent title to an office, and by its affirmative action to remove obstacles which stand in his pathway in his proposed intrusion into the office; and upon the undisputed facts the court is able to see that he is ineligible, and it simply determines that it will not aid him; and in making such determination it in no way infringes upon the jurisdiction confided to the senate. It simply exercises a jurisdiction which he has invoked."

There can, of course, be no question that under the Constitution, [8] plenary power is lodged in each house to judge of the qualifications, elections and returns of its membership; nevertheless, when it appears that such body has proceeded in an unconstitutional manner, the courts are not permitted to lend their assistance in aid of one who sues for his emoluments, basing his rights upon such action.

We are not concerned here with the right of a *de facto* officer to sue upon *quantum meruit* for the value of services rendered. [9] In this proceeding, relator desires the court by *mandamus* to compel the state treasurer to pay him the compensation which

he alleges is due him by reason of his appointment and services. To obtain the aid of a court by *mandamus,* a party must establish a clear legal right in himself to the relief prayed for, and a violation of duty upon the part of the person or officer sought to be coerced. (Rev. Codes, sec. 7214; *State ex rel. Beach* v. *District Court,* 29 Mont. 265, 74 Pac. 498; *State ex rel. Donlan* v. *Board of Co. Commissioners,* 49 Mont. 517, 143 Pac. 984.)

[10]   Relator having acquired his membership in the house of representatives in a manner not provided for by the Constitution, and his petition disclosing this fact on its face, he does not bring himself within any rule entitling him to the aid of a writ of *mandamus.*

The judgment appealed from is reversed, with directions to the district court to dismiss the proceeding.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, MATTHEWS and COOPER concur.