STATE EX REL. GREENE, RELATOR, *v.* ANDERSON, COUNTY CLERK, RESPONDENT.

(No. 8,375.)

(Submitted October 13, 1942. Decided October 14, 1942.)

[129 Pac. (2d) 874.]

*Mr. John J. Greene, pro se.*

584

*Mr. R. V. Bottomly,* Attorney General; *Mr. George S. Smith,* Assistant Attorney General, and *Mr. Wilbur P. Werner,* County Attorney of Glacier County, for Respondent

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Relator, a registered elector of Glacier county, seeks an injunction restraining respondent as county clerk from receiving and filing in his office the petitions of candidates for the office of state senator from that county and from placing the names of candidates upon the official ballots for the election to be held on November 3, 1942. This court has accepted original jurisdiction of the cause as necessary and proper to the complete exercise of its appellate jurisdiction. (Constitution of Montana, Art. VIII, sec. 3), since it would have been impossible, under the ordinary procedure, to litigate the matter in district court by appeal in time to obtain a final decision before the election.

The petition alleges that the respondent will accept nominating petitions and will proceed to prepare and distribute official ballots containing the names of such candidates for the election of a state senator to fill the vacancy, unless restrained by order of this court. Respondent has appeared by demurrer and contends that under the proper interpretation of the Constitution the petition fails to state a cause of action. The facts are therefore undisputed.

At the general election of 1940 Daniel J. Drumheller was elected to, and thereafter took office as state senator from Glacier county for a four-year term beginning on the first Monday in January, 1941; he died on July 12, 1942; on July 27 the board of county commissioners duly appointed Dr. C. H. Minette, a qualified person, as state senator to fill the vacancy so caused; and on August 4 the Governor issued a proclamation to the effect that a special election to fill the vacancy be held at the time of the general election.

The sole question is the interpretation of section 45 of Article

V of the Constitution of Montana, which provides as follows: "When vacancies, *caused by death*, occur in either house of the legislative assembly, such vacancies shall be filled by appointment by the board of county commissioners of the county from which such vacancy occurs. All vacancies *occurring from any other cause* shall be filled by election upon proclamation of the governor."

Prior to its amendment by the people at the general election of 1932 that section of the Constitution provided as follows: "When vacancies occur in either house the governor or the person exercising the functions of the governor shall issue writs of election to fill the same."

Respondent contends that the controversy is governed by this court's decision in *State ex rel. McGowan* v. *Sedgwick*, 46 Mont. 187, 127 Pac. 94, 95, in which it was held that under sections 4 and 5 of Article XVI of the Constitution as they then appeared, an appointee to fill a vacancy in the office of county commissioner could hold office only until the next general election, and that the remainder of the vacancy must then be filled by election. It is not necessary to consider the correctness of that decision, for the legislature and the people subsequently in 1927-28, when establishing commissioner districts, specifically amended section 4 to so provide.

In any event, it is impossible to extend that holding to legislative vacancies, as further analysis will show. Section 4 of Article XVI then provided that county commissioner vacancies should be filled by appointment by the district judge, without saying how long the appointee should hold office; section 5 provided, as it still does, that vacancies in all county, township and precinct offices, except that of county commissioner, should be filled by appointment by the board of county commissioners, and added "and the appointee shall hold his office until the next general election." The court held that the latter provision of section 5 applied to the appointment of commissioners under section 4, as well as to the appointment

of other county, township and precinct officers under section 5. Nothing more was necessary to the decision, but the court led up to it with the sweeping statement that "in every instance of a vacancy in an elective office, where the vacancy is to be filled by appointment, the appointee shall hold only until the people who elected his predecessor have the first opportunity to fill the office with a person of their own choice; and this rule is general, applies to every state, district and county office, unless an exception is made in favor of one appointed to a vacancy in the office of county commissioner."

It is apparent that the latter general statement was by no means an adjudication of the present question. It is not even in point, since it was limited to "every instance * * * where the vacancy is to be filled by appointment," which was not then true of legislative offices, vacancies in which were elective and continued so until the amendment in question, twenty years later.

Assuming that the court was right in holding that section 5 of Article XVI was to be read with section 4 of that Article, it is apparent that it cannot be read with section 45 of Article V, which is in question here, since legislative officers are not made county, township or precinct officers by the Constitution. Section 4 of Article V made it the duty of the first legislative assembly to divide the state into senatorial and representative districts. Section 3 of Article VI provides that representative districts may be altered from time to time as public convenience may require, that when a district is composed of two or more counties they must be contiguous, and that no county shall be divided in forming representative districts. Section 5 of that Article provided that each of the counties then existing should constitute a senatorial district; and section 4 provides that each new county shall "be entitled to one senator, but in no case shall a senatorial district consist of more than one county."

It is clear that while county lines are to be observed in the establishment of senatorial and representative districts, they

are not necessarily identical under the Constitution, and that even though they coincide exactly under the statutes, legislative officers are no more county officers than would be the trustees of a school district comprising a full county. Article XVI of the Constitution makes it clear that the officers there concerned are those having to do with county and local affairs, and not those whose duties are otherwise, but who are selected to represent or administer districts happening to be coextensive with county lines.

In *State ex rel. Cutts* v. *Hart,* 56 Mont. 571, 185 Pac. 769, 7 A. L. R. 1678, this court had occasion to consider this constitutional provision prior to amendment. Jerry J. Flannigan, a representative from Silver Bow county, had died on February 7, 1917, in the midst of the Nineteenth Legislative Assembly, and the Governor purported to appoint William Cutts to fill the vacancy, under sections 422 and 423, Revised Codes of 1907 (now sections 513 and 514, Revised Codes of 1935), providing:

"Sec. 422. Whenever a vacancy * * * occurs in either house of the legislative assembly, the governor must at once issue a writ of election to fill, such vacancy.

"Sec. 423. When any office becomes vacant, and no mode is provided by law for filling such vacancy, the governor must fill such vacancy by granting a commission, to expire at the end of the next legislative assembly or at the next election by the people."

The court said: "It is contended by respondent that, Flannigan having died during a session of the Legislature and there being no mode provided by the Code for filling the vacancy during the time which would elapse before the election could be had, these sections, and particularly section 423, authorized an appointment by the governor, which view was adopted by the House.

"Section 29, Article III of the Constitution provides: 'The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.'

In our view the Constitution (Article V, sec. 45, supra), provides the only means for filling a vacancy occurring by death or resignation of a member. The Constitution being mandatory as to the subjects on which it speaks (sec. 29, supra), and having provided that when vacancies occur in either house, the Governor shall issue writs of election to fill the same, the people retained in themselves, and in themselves alone, the power to fill vacancies in the legislative bodies. There being, by the terms of the constitutional provision above referred to, a 'mode * * * provided by law for filling such vacancy,' the provisions of the statute (section 423) do not apply here; * * *.''

Since that decision, which held that "the people retained in themselves, and in themselves alone, the power to fill vacancies in the legislative bodies,'' the people chose by the amendment to entrust that power to boards of county commissioners with respect to vacancies caused by death, reserving the right to fill by election only "vacancies occurring from any other cause."

It seems apparent that the amendment was intended to meet situations like that in the *Cutts case,* where the vacancy must be filled in some manner or the county remain unrepresented. Under the republican form of government the legislative branch is the fundamentally basic authority, the executive's duty being principally to execute and administer its enactments; and the legislative branch should therefore be kept close to the people by directly representing all senatorial and representative districts. For those reasons and because in this state counties and legislative election districts are traditionally (although not necessarily) identical in area, the legislature and the people provided by the constitutional amendment that an appointment to fill a legislative vacancy caused by death should be made by the board of county commissioners rather than by the Governor.

It is not clear why the legislature and the people chose to authorize such appointment in the case of all vacancies caused by death, whenever arising, and to retain the right to fill by

election all vacancies otherwise caused, whenever arising. Since the purpose seems to have been to prevent the non-representation of counties in the legislature by reason of a sudden emergency, it would seem more logical to have provided that all vacancies, however arising, shall be filled by appointment, but only until they can be filled by election. But presumably other considerations prevented that result. It may be, also, that the decision to limit the appointment to involuntary vacancies caused by death, thus perhaps leaving counties unrepresented on account of vacancies otherwise caused, was to prevent the possible manipulation of legislative offices through voluntary vacancies. But regardless of the legislature's and people's motives, we must take the constitutional provision as we find it.

It is interesting to note the history of the amendment as shown in the House and Senate Journals of the Twenty-Second Legislative Assembly. As originally proposed by House Bill 71, and as adopted by the House, the amendment was to make the section read as follows: "Section 45. When vacancies occur in either house of the Legislative Assembly, such vacancies shall be filled by appointment by the Board of County Commissioners of the county from which such vacancy occurs."

Thus all legislative vacancies were to be filled by appointment rather than by election. The senate approved the proposal after amending it by inserting, after the word "vacancies," the words "caused by death," thus limiting the section's application, and not providing for filling vacancies caused otherwise than by death. The house refusing to concur in the amendment, the house and senate appointed conference committees, upon whose joint report, made on the last legislative day, both houses agreed, adopting the senate amendment and adding the final provision for election to fill all vacancies arising otherwise than by death. Thus the legislature gave serious though hurried attention to the question what vacancies should be filled by appointment and chose to extend that

method only to vacancies arising by death, and to all such vacancies without exception.

The respondent has not referred us to any other provision of the Constitution which must be read with the section in question. He does refer to section 34 of Article VIII, also referred to in *State ex rel. McGowan* v. *Sedgwick,* supra, which provides for appointments to fill vacancies in the offices of Justice and clerk of the supreme court, judge and clerk of district courts, county attorney and justices of the peace, and goes on to provide: ''A person appointed to fill any *such vacancy* shall hold his office until the next general election and until his successor is elected and qualified.'' ''Such vacancy'' obviously refers to the specific offices there in question, and not to legislative and other vacancies than those there treated. That section was therefore not in point in the *McGowan case* and is not in point here, since it has no application to legislative vacancies and cannot override or control the specific provision of section 45, Article V. For the same reason, the decision in *State ex rel. Patterson* v. *Lentz,* 50 Mont. 322, 146 Pac. 932, which is based upon section 34 of Article VIII, is not in point here.

Respondent's contention, in essence, is that the provision in question is for merely an interim appointment, effective only until the election, when the office is to be filled by the people, under the general spirit of the Constitution. If that were so, there would have been no need for the final provision that "all [legislative] vacancies occurring from any other cause shall be filled by election."

Furthermore, the expression "vacancies shall be filled" without any limitation of the words, certainly means to fill them completely; and it was only because of other provisions indicating that there were two fractional vacancies to be filled, one by appointment until election, and a second then by election, that the decisions in *State ex rel. Patterson* v. *Lentz* and *State ex rel. McGowan* v. *Sedgwick* were proper.

By adopting the amendment at the general election of 1932,

the people provided that all legislative vacancies arising otherwise than by death, without exception or limitation, should continue to be filled by election as theretofore; but that all such vacancies arising by death, without exception or limitation, should thenceforth be filled by appointment. The legislature and people did not choose to confine the provision to interim vacancies, nor to limit it in any way; and we have no authority to add any limitations or exceptions which may seem to us desirable; having specifically and completely dealt with the contingency of legislative vacancies arising by death, and having chosen to have such vacancies filled exclusively and finally by appointment, they have left nothing to be done by legislative enactment or judicial interpretation. This court's statement in the *Cutts case*, before the amendment, and after the decision in *State ex rel. McGowan* v. *Sedgwick*, supra, that section 45, Article V of the Constitution, provided the only means of filling legislative vacancies caused by death, is equally applicable to the provision as it now appears.

The injunction prayed for must therefore issue, enjoining and restraining respondent from accepting and filing nominating petitions for the office in question, and from having the names of such nominees printed upon official ballots for the election of a state senator at the November election. Accordingly it is so ordered.

ASSOCIATE JUSTICES ERICKSON, ANDERSON and MORRIS concur.

MR. JUSTICE ANGSTMAN takes no part in the above decision.