STATE, EX REL. GRANT, RELATOR, *v.* EATON, LIEUTENANT GOVERNOR, ET AL., RESPONDENTS.

(No. 8408.)

(Submitted January 20, 1943. Decided February 2, 1943.)

[133 Pac. (2d) 588.]

200

202

*Mr. Edmond G. Toomey* and *Mr. E. J. Stromnes*, for Relator, submitted a brief and argued the cause orally.

*Mr. R. V. Bottomly*, Attorney General, *Mr. George S. Smith* and *Mr. Alfred F. Dougherty*, Assistant Attorneys General for Respondents, submitted a brief; *Mr. Smith* argued the cause orally.

*Mr. Victor H. Fall, amicus curiae*, submitted a brief and argued the cause orally.

MR. JUSTICE ADAIR delivered the opinion of the court.

Mandamus. Original proceeding. The relator, Jesse T. Grant, petitions for a writ of mandate to compel respondents to deliver to him the emoluments of the office of "acting" senator from Garfield county.

Relator's petition states the following facts: At the general election held on November 4, 1940, Charles H. Mahoney was elected to the office of state senator from Garfield county for a full term of four years. On January 6, 1941, he qualified and served throughout the Twenty-Seventh Legislative Session as such senator. Following the declaration of war by Congress, Charles H. Mahoney, then an officer of the Officers' Reserve Corps of the United States, formally entered the Army of the United States on active duty in time of war with the commission of lieutenant. Since November 27, 1942, due solely to his military duties and his status as an officer in the army, Lieutenant Mahoney has been absent from the state of Montana. Lieutenant Mahoney has not resigned his office as state senator. Relator states that Lieutenant Mahoney would resume his seat in the state senate if permitted so to do by his superior officers in the army, but such officers have granted

him no leave to return to this state. On December 10, 1942, the board of county commissioners of Garfield county, taking cognizance of Lieutenant Mahoney's military status and absence from the state, assumed to appoint the relator as "acting" state senator of Garfield county, and issued relator a certificate of appointment "to replace C. H. Mahoney, the elected state senator * * * who has entered the military service of the United States in the manner set forth in Section 1 of Chapter 47, Laws of Montana, Twenty-Seventh Session, 1941, said appointment to be effective January 4th, 1943, and to continue for the unexpired term of the officer whose duties he assumes."

On January 4, 1943, at the opening of the Twenty-Eighth Legislative Assembly, relator presented his certificate of appointment to the senate and, after taking and subscribing the oath of office, was given the seat of Senator Mahoney, assuming to occupy same as "acting" state senator from Garfield county and, as such, participated in the proceedings of the senate to and including the fifth legislative day. On January 8, 1943, the respondent Ernest T. Eaton, lieutenant-governor and ex officio president of the senate, refused to certify relator's name on the mileage and per diem payrolls of the senate, the respondent John J. Holmes, as state auditor, advised relator that he would refuse to issue relator a warrant, and respondent Thomas E. Carey, as state treasurer, advised relator that he would refuse to pay any warrant issued to relator for any mileage or per diem unless commanded so to do by court order on the ground that, relator, as "acting" senator, is entitled to neither mileage nor per diem. Relator states that, unless he receives compensation therefor, he will be unable to continue to serve as such "acting" senator and that he has no plain, speedy and adequate remedy at law except by application to this court.

The respondents, represented by the Attorney General, have filed motions to quash upon the ground that the facts stated in the petition and the alternative writ are insufficient to constitute a cause of action or to show that relator is entitled to a. writ of mandate. The facts, as stated in relator's petition,.

stand uncontroverted. The controversy is thus brought before this court on the law. (*State ex rel. Du Fresne* v. *Leslie,* 100 Mont. 449, 453, 50 Pac. (2d) 959, 101 A. L. R. 1329.)

The question for decision is: Do the facts stated in relator's petition establish a clear legal right in himself to an office in the state senate so as to legally entitle him to a writ of mandate?

"To obtain the aid of a court by mandamus, a party must ██ establish a clear legal right in himself to the relief prayed for, and a violation of duty upon the part of the person or officer sought to be coerced." (*State ex rel. Cutts* v. *Hart,* 56 Mont. 571, 578, 185 Pac. 769, 771, 7 A. L. R. 1678; Rev. Codes, sec. 9848.)

Relator bases his claim to a seat in the legislative assembly ██ ██ solely upon the provisions of Chapter 47, Laws 1941, which, he contends, authorizes his appointment as an "acting state senator" under the circumstances disclosed by his petition.

Senate Bill No. 48, introduced by Senator Mahoney and another, upon its passage and approval became Chapter 47, Laws 1941. Its title reads: "An Act to provide for reemployment of elected officers and employees of the State of Montana and any political subdivision thereof, who shall hereafter serve in the military forces of the United States, upon the completion of their period of training and service; to provide for 'acting' officers to serve during such absence of elected officers; and relating to procedure to be followed to secure such reemployment."

Section 1 of the Act assumes to designate the particular public officers and employees to whom the Act applies. Subdivision (b) of paragraph (2) of section 1 specifically designates the *elected* public officers to whom the Act applies in these words: "(b) If such position was that of an elected, executive or judicial officer of the State of Montana or any political subdivision thereof, such person shall be restored to such position, status and pay at any time during the term for which he was elected as provided herein."

No mention whatever is made of legislative officers in section

1. Only elected, executive and judicial officers are designated. Notwithstanding this particular naming of elected, executive or judicial officers, and the complete failure to mention legislative officers, still relator contends that the Act applies to all elected officers including the elected members of the legislative assembly.

To make subdivision (b) of paragraph (2) of section 1 apply to all elected officers, executive, judicial and legislative, would require the deleting of the words "executive or judicial" therefrom, or, the adding of the word "legislative" thereto. Such alterations of the statute and resulting changes in the Act, if made at all, must be made by the legislature and not by the courts. (11 Am. Jur. Constitutional Law, sec. 198, pp. 900, 901). Courts are enjoined by the Constitution from exercising powers properly belonging to the legislative department (Article IV, Constitution).

The reference in section 7 of Chapter 47 to members of the legislative assembly does not enlarge the specific limitations set forth in paragraph (2) (b) of section 1 of the Act wherein are listed the only elected public officers to which the Act is to apply for the reason that in said section 7, the application of the Act is specifically confined to "any elected officer, *designated* in paragraph (b) of Section 1." As before stated, the elected members of the legislative assembly are not "*designated* in paragraph (b) of Section 1." We conclude therefore, that Chapter 47, Laws of 1941, does not apply to elected legislative officers. This court so commented in the recent case of *Gullickson* v. *Mitchell*, 113 Mont. 359, 126 Pac. (2d) 1106, 1110.

A public office is a public trust. It is possible that the legislators so considered their respective offices when they thus eliminated themselves from the applicability of the Act.

"At common law in England, a public office was considered as an incorporeal hereditament grantable by the Crown as the source of all power and the disposer of offices. * * * But that idea of a public office does not prevail in this country. * * * That a public office is the property of him to whom the execution

of its duties is intrusted is repugnant to the institutions of our country, and at issue with that universal understanding of the community which is the result of those institutions. * * * Every public office is created in the interest and for the benefit of the people, and belongs to them. The right, it has been said, is not the right of the incumbent to the place, but of the people to the officer. * * * The incumbent has no vested right in the office which he holds, * * *'' (42 Am. Jur., sec. 9, pp. 886, 887.)

''The American concept of a public office is that of a public agency or trust created in the interest and for the benefit of the people. * * * An incumbent of a public office is invested with certain powers and charged with certain duties pertinent to sovereignty. The powers so delegated to the officer are held in trust for the people and are to be exercised in behalf of 'the government or of all citizens who may need the intervention of the officer. * * * Public officers, in other words, are but the servants of the people, and not their rulers. They are amenable to the rule which forbids an agent or trustee to place himself in such an attitude toward his principal or *cestui que trust* as to have his interest conflict with his duty.'' (42 Am. Jur., sec. .8, p. 885.)

On oral argument of this cause it appeared that two days *after* the filing of relator's petition in this court and nine days *after* the senate had seated the relator J. T. Grant, as ''acting'' senator from Garfield county, in the senate, the following motion, made by Senator Haight of Fergus county, was duly carried and entered in the journal proceedings of the senate of January 13, 1943, viz.: ''I move that the Journal of this Senate show that Charles H. Mahoney is a member of the Senate of the State of Montana, having been duly elected by the voters of Garfield County and has qualified as such Senator and is qualified to act as a member of the Senate of the State of Montana for the four year term beginning the first Monday in January 1941, and that said Charles H. Mahoney is entitled to vote at any time he is personally present in any

session of the Senate of the State of Montana during the above mentioned time.''

Thus it would appear (1) that the state senate assumes to recognize Charles H. Mahoney as a duly *elected* and qualified senator from Garfield county and as such "entitled to vote at any time he is personally present in any session of the senate" to January 1, 1945, and (2) that the state senate also assumes to seat and recognize the relator, J. T. Grant "as the duly and regularly *appointed*, qualified and acting state senator of and from Garfield County, Montana.''

''The duties of a state senator are purely personal in their nature. * * * While the General Assembly is in session the duties of a state senator require his presence in" the seat of government. (*People ex rel. Myers* v. *Haas*, 145 Ill. App. 283.) State legislators are public officers (42 Am. Jur., sec. 26, p. 898); they are state officers (Ricker's Petition, 66 N. H. 207, 29 Atl. 559, 24 L. R. A. 740); they are constitutional officers expressly provided for in our Constitution (Articles IV and V, Constitution of Montana).

''Constitutional offices differ in many ways from offices created by statute. Over the latter, the legislature has full control, whereas its power over constitutional offices is limited. It cannot abolish a constitutional office, nor can it change such an office, except as expressly permitted by the Constitution itself.'' (42 Am. Jur., sec. 18, pp. 894, 895.)

Relator contends that it is competent for the legislative assembly to provide another,—a ''stand by''—to perform the duties of the duly *elected* members of the Assembly in the event of the temporary disability of such members. With this contention we cannot agree as we are of the opinion that the law does not permit a substitute to carry on the duties of any member of either house during any temporary disability of such member. To act, to function, to participate in the proceedings of the assembly,—to vote, the legislator must be personally present in the Assembly. We know of no procedure in American parliamentary practice that authorizes voting by proxy

in any state legislative assembly, that permits "stand 'bys" or other bystanders to be *appointed* to move in and function in the place of a duly *elected* member of either house of the legislative assembly who may be *temporarily* absent, disabled or indisposed. If substitutes were sanctioned what would result from a "Call of the House" or a "Call of the Senate?" Clearly senators and representatives are seated, they vote and they function in person and not by proxy.

Section 4, Article V of the Constitution provides that "there shall be no more than *one* senator from each county." Section 4 of Article VI provides: "Whenever new counties are created, each of said counties shall be entitled to *one* senator, but in no case shall a senatorial district consist of more than one county." Section 42 of the Revised Codes provides: "Each county of the state of Montana shall constitute a senatorial district and each senatorial district is entitled to *one* senator." (See, also, section 43, Revised Codes of Montana.) Garfield county may not, at one and the same time, have one duly *elected*, qualified living senator and also one duly *appointed* acting senator.

Relator's petition states that Charles H. Mahoney "has never resigned his office as State Senator." During his absence from the state and while in the military service, may he lay claim to the salary and emoluments of the office? Section 31 of Article V of the Constitution provides: "Except as otherwise provided in this Constitution, no law shall extend the term of any public officer, or * * * *diminish* his salary or emolument after his *election* or appointment; * * *". May the "salary or emolument" of Senator Mahoney, if any be due him, be diminished without his consent by paying same to relator as a substitute or "acting" senator from Garfield county? Does not orderly procedure require a determination as to whether or not the seat of the senator from Garfield county be vacant before assigning that seat to another? Senator Mahoney is not represented in these proceedings and we do not intend to here adjudicate his right or title to the office in question, but as this

case is of concern to all the people of this state, we respectfully call attention, at this time, to the above problems and provisions of our Constitution.

"The certificate of *election* from the clerk of the proper county is prima facie evidence of the right to membership of the person certified therein to be *elected,* for all purposes of organization of either branch of the legislative assembly." (Sec. 56, Rev. Codes.) The one and only exception to the rule requiring *election* is when a vacancy, *caused by death,* occurs in either house of the legislative assembly in which event the vacancy so occasioned shall be filled by *appointment* pursuant to section 45 of Article V of the Constitution, which reads: "When vacancies, caused by death, occur in either house of the legislative assembly, such vacancies shall be filled by appointment by the board of county commissioners of the county from which such vacancy occurs. All vacancies occurring from any other cause shall be filled by election upon proclamation of the governor." This section of the Constitution is mandatory and prohibitive. (Sec. 29, Art. III; *State ex rel. Du Fresne* v. *Leslie,* supra.)

The method prescribed by statute for filling all vacancies in the legislative assembly, other than those occasioned by death, is through an election that may be called on ten days' notice. The law provides that whenever the governor "orders a special election to fill a vacancy in the office of state senator * * * at least ten days before such special election, the governor must issue an election proclamation * * * and transmit copies thereof to the boards of commissioners of the counties in which such elections are to be held." (Sec. 533, Rev. Codes.)

The people have thus reserved in themselves the power to *elect* members to the legislative assembly and "the people retained in themselves, and in themselves alone, the power to fill vacancies in the legislative bodies" (*State ex rel. Cutts* v. *Hart,* supra), excepting only vacancies caused by death, in which event alone, have the people entrusted to the boards of county

commissioners the power to *appoint* a successor. (*State ex rel. Greene* v. *Anderson,* 113 Mont. 582, 129 Pac. 874.)

In the instant case there is no vacancy *caused by death* in the ▮▮▮ office of state senator from Garfield county, hence, under the Constitution, there is no power or authority in the board of county commissioners of that county to *appoint* relator or anyone else to such office. "A vacancy in office for any of the causes enumerated in the Constitution or statute is usually regarded as occurring at the time of the happening of the event which is the cause of the vacancy, and no judicial determination that the vacancy has occurred is necessary." (46 Corpus Juris, 974.) However the relator, in his brief, asserts: "Here we have *no vacancy* arising from death because Senator Charles Mahoney is alive and claiming the right to hold his seat at the same time he claims the right to remain as an officer in the Army of the United States, * * *. There is no vacancy here, and there cannot be under the circumstances." Clearly the relator makes no claim that his alleged *appointment* was to fill any vacancy in the office of state senator from Garfield county.

Relator contends that this court has no jurisdiction to ▮▮▮ determine that he is ineligible to a seat in the state senate, because the Constitution, section 9, Article V, provides: "Each house shall * * * judge of the elections, returns, and qualifications of its members." Relator urges that as he has already been seated by the senate, the courts may not interfere with such jurisdiction of the senate. It must be remembered however that the relator has voluntarily come into this court and that he invokes its jurisdiction seeking the aid of this court to clothe him with apparent title to a constitutional office. Relator asks that this court issue its writ to compel three constitutional executive officers of this state to recognize his *title* to the *office* which he claims. He asks that the lieutenant-governor, state auditor and state treasurer be coerced by this court into delivering to relator the salary and emoluments of the office of state senator. Upon the uncontroverted facts which relator sets forth in the petition which he filed in this court, it appears that the

board of county commissioners of Garfield county was wholly without authority under the Constitution to appoint relator as state senator, either "acting" or otherwise, and in view of such admitted facts and the Constitution of Montana this court determines that it may not grant relator the relief prayed for. This court here gives its reasons for declining to aid the relator and, in rendering such decision, the court in no way infringes upon the jurisdiction confided to the senate. We simply exercise a jurisdiction which the relator himself has voluntarily invoked. "There can, of course, be no question that under the Constitution plenary power is lodged in each house to judge of the qualifications, elections and returns of its membership; nevertheless, when it appears that such body has proceeded in an unconstitutional manner, the courts are not required to lend their assistance in aid of one who sues for his emoluments, basing his rights upon such action." (*State ex rel. Cutts* v. *Hart*, supra.)

"The legislature does not inherently possess any judicial power, or any mixed jurisdiction partly legislative and partly judicial. The doctrine as to the separation of the powers of the government into three distinct departments is considered sufficient to prevent the legislature from exercising any judicial function whatsoever, except such as may in terms be allowed to it by the Constitution itself." (6 R. C. L. page 160.)

"The rule is well settled that the judicial power cannot be taken away by legislative action. Any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional. * * * It has no power to direct the judiciary in the interpretation of existing statutes." (11 Am. Jur., Constitutional Law, sec. 206, pp. 908, 909.)

Again, in *State ex rel. Cutts* v. *Hart*, supra, this court said: "The right of a public officer to compensation for the performance of duties imposed upon him by law does not rest upon contract, but is incidental to the right to hold office [Citing authority.] * * * One who has occupied an office to which he is ineligible is not entitled to maintain an action for the salary

212

thereof. [Citing case.] When a statute provides that an officer shall be appointed in a certain way, if he be appointed in a manner different from that provided by statute, held, he cannot recover as a *de facto* officer. [Citing case.] * * *"

Relator's petition affirmatively showing that there is no vacancy, caused by death, the board of county commissioners was wholly without authority to appoint him to the office claimed. The petition states no facts that entitle relator to a writ of mandamus. Accordingly the motions to quash are sustained. Writ denied. Proceeding dismissed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON, ANDERSON and MORRIS concur.