In the Matter of the Application of GEORGE J. WEPPLER, Petitioner, to Compel the Performance of a Duty Enjoined by Law by, or to Review the Acts of, PAUL J. KERN and Others, as Municipal Civil Service Commissioners in, for and of the City of New York and Constituting the Civil Service Commission of the City of New York, and JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, Respondents.

Supreme Court, Special Term, New York County, March 31, 1939.

*William Roth* [*William Roth, George D. Zahn* and *Frederick J. Sullivan* of counsel], for the petitioner.

*William C. Chanler, Corporation Counsel* [*Jeremiah M. Evarts* and *David Du Vivier* of counsel], for the respondents.

LEVY, J. This is a proceeding under article 78 of the Civil Practice Act to compel the municipal civil service commission and the comptroller to certify that petitioner served as clerk of the Fourth District Municipal Court, borough of Manhattan, during the period beginning July 15, 1935.

The applicant was appointed to that position pursuant to section 1373 of the Greater New York Charter by the justices of that

court on November 24, 1934, to fill the vacancy caused by the death of William Murphy on November 3, 1934. While the appointment was nominally for a term of six years, it could not, under section 5 of the Public Officers Law, extend beyond September 7, 1937, when the term of William Murphy expired. Petitioner qualified by taking the oath of office and filing the required bond, entered upon the performance of his duties, and discharged them, seemingly, with satisfaction. He continued to receive his salary during the period ending July 15, 1935. However, since that time he has received no compensation because of the comptroller's refusal, based on section 20 of the Civil Service Law, to furnish the necessary certificate. Nevertheless, he has continued to perform all the duties of his office and the city has paid the premium on his bond, which has been renewed from year to year. He has collected legal fees payable into court and has accounted to the city.

This strange situation resulted from the resolution of the municipal civil service commission reclassifying the position by striking it from the exempt and adding it to the competitive class, which took effect, with the approval of the State Civil Service Commission, on August 22, 1934. At the time of petitioner's appointment there was no available eligible list. Furthermore, there is no dispute, apart from the length of the appointee's prospective incumbency, that he was properly designated. It is also uncontested that no other person has been appointed at any time since July 15, 1935, either by the justices of the district or by the justices of the borough, who have the power to make the appointment in the event of the failure of the district justices to make it. No eligible list was prepared by the municipal civil service commission because its act in transferring the office to the competitive class was at once challenged.

On December 4, 1934, its resolution was invalidated at Special Term. The Appellate Division affirmed the order (*Friedman* v. *Finegan*, 243 App. Div. 689), but the Court of Appeals (268 N. Y. 93) reversed it on June 4, 1935, holding that the reclassification of the position was valid.

In the meantime no attempt was made to disturb petitioner's tenure. The city officials regarded him as a temporary appointee under the provisions of section 15 of the Civil Service Law, which is also found in section IX of rule V of the Rules of the Municipal Civil Service Commission. Subdivision 1 of section XV reads as follows: " Whenever there are urgent reasons for filling a vacancy in the competitive class and there is no list of persons eligible for appointment after competitive examination, the appointing officer

may nominate a person to the State or municipal commission for non-competitive examination, and if such nominee shall be certified by such commission as qualified after such non-competitive examination, he may be appointed provisionally to fill such vacancy until a selection and appointment can be made after competitive examination, but such provisional appointment shall not continue for a longer period than four months, nor shall successive provisional appointments be made to the same position under this subdivision."

Paragraph 7 of section IX of rule V provides that " Where there is a vacancy of an emergency character in a position in the competitive class, and it is not practicable either to secure a person by certification from an eligible list or to conduct a non-competitive examination in the absence of such a list in time to meet such emergency, an appointment may be made without certification or examination, subject to the subsequent approval of the commission, for a period not exceeding fifteen days; and such appointment may be renewed for only one additional period of fifteen days, subject, however, to the approval of the commission."

Respondents argue that the appointment was made under either one of the two rules. Thus the impracticability of establishing an eligible list until the matter had been determined by the Court of Appeals created an emergency justifying petitioner's continued incumbency for a longer provisional period than four months. It did not, however, they contend, excuse the retention of petitioner for more than a brief period after a proper list had been established. In fact, in at least one other instance the justices of a Municipal Court proceeded to designate the successor to a deputy clerk who had received his appointment under similar circumstances. He sought without success to restrain the justices from removing him (*McBride* v. *O'Rourke*, N. Y. L. J. Aug. 10, .1935, p. 429), for it was there held that while the appointment was for a stated term, expiring February 13, 1938, it was only provisional pending the establishment of an eligible list.

Petitioner contends, however, that he was appointed as a public officer and that he held office at least until September 7, 1937, when the term of his predecessor expired. Section 5 of the Public Officers Law declares that " Every officer  *  *  *  having duly entered on the duties of his office, shall, unless the office shall terminate or be abolished, hold over and continue to discharge the duties of his office, after the expiration of the term for which he shall have been chosen, until his successor shall be chosen and qualified; but after the expiration of such term, the office shall be deemed vacant for the purpose of choosing his successor." Undoubtedly the requirements of filing an oath and giving a bond mark the position as one

belonging to the class of public officers. Moreover, a reclassification does not destroy its character as a public office. Yet it does not necessarily follow that the Public Officers Law rather than the Civil Service Law controls petitioner's tenure.

While it is true that for a period of several months the resolution of the civil service commission establishing competitive status had been rendered nugatory, the final establishment of its correctness must logically be deemed to validate it as of August 22, 1934, and not as of the date of its final vindication by the Court of Appeals. Temporary invalidation by intermediate decision in no wise alters its effective date. Consequently, during the period when the commission's action was litigated, petitioner was at least a *de facto* occupant of the position with competitive status and subject to the Civil Service Law. The observation in *Matter of Sandford* v. *Finegan* (276 N. Y. 70) while, perhaps, in the nature of dictum, seems to sustain this interpretation. It was there conceded that if the filling of the vacancy had taken place prior to the transfer of the position to the competitive class, the appointee would have continued through the entire unexpired term. If, however, "the incumbent had died or resigned after the office had been changed from the exempt class to that of the competitive class, the new appointee would have to be taken from the eligible list." William Murphy died on November 3, 1934. The reclassification became effective August 22, 1934. The vacancy, therefore, was filled subject to the application of civil service rules and could continue only pending the establishment of an eligible list.

An order under article 78 must be based upon a clear legal right. Section 20 of the Civil Service Law and other pertinent sections bar petitioner's relief against the civil service commission and against the comptroller by way of summary order, either peremptory or alternative. On the other hand there are certain equitable or quasi-equitable considerations which might serve him in an action in *quantum meruit* or in an application under section 246 of the Greater New York Charter. There is not the least doubt that the petitioner has been *de facto* clerk for the whole period to date. His incumbency has been recognized by the city officials. An abortive attempt was made in 1936 to have the petitioner removed from office in a proceeding by the president of the Civil Service Reform Association against the president justice of the Municipal Court (*Welling* v. *Bissell*, N. Y. L. J. Aug. 25, 1936, p. 505). An alternative order was granted but the proceeding was apparently abandoned and petitioner was allowed to continue in office. No other person made a claim to it. Steps were initiated by the president justice to appoint a successor from the eligible

list, but the justices failed to act. A mandamus could have been obtained to direct the justices to make an appointment or even without such act the justices of the borough could have been convened to make an appointment from the eligible list. Perhaps their failure to act might be excused by the doubts which surrounded the petitioner's original appointment. It was not until 1937 that some clarification on the subject was obtained under the decision in *Matter of Sandford* v. *Finegan* (*supra*).

The question naturally suggests itself why petitioner should be made the victim of general inactivity by city officials and others when benefits to the city very likely have accrued from the performance of his duties. There may be difficulties in a suit in *quantum meruit*, in view of *Matter of Hulbert* v. *Craig* (124 Misc. 273). On the other hand, there may be elements of distinction. There may also be practical difficulties under section 246 of the Greater New York Charter to secure unanimous vote of the board of estimate, but no actual legal difficulties. Petitioner has made his claim to the comptroller, so that the facts and circumstances are in the latter's possession.

Respondents suggest that the petitioner should seek relief under section 8 of the Civil Service Law from those who illegally appointed him. Under the circumstances disclosed the appointment was not illegal. Even though the section should be construed to include illegal continuance of employment, that circumstance, too, resulted from the acquiescence of the justices of the district and borough and other city officials.

I have gone at some length into petitioner's application because I desire to indicate that the denial of an order under article 78 of the Civil Practice Act is a technical disposition which should not bar petitioner from pursuing other remedies which he may be entitled to enforce either on legal or equitable grounds. The motion is, therefore, denied as indicated.