■ MANSFIELD STATE BANK, Appellant, v MAURICE J. COHN, Respondent. — Order, Supreme Court, New York County (Sherman, J.), entered January 16, 1981 (107 Misc 2d 1078), which denied the motion of judgment creditor Mansfield State Bank for an order (1) directing the County Clerk to file a judgment *nunc pro tunc* as of June 16, 1977, and (2) declaring the bank's judgment to have priority over subsequent judgment creditors' filings, affirmed, with costs. The procedural background and the facts are fairly and comprehensively set forth in the dissenting opinion which presents a thoughtful and scholarly analysis of relevant authorities in support of a conclusion reached essentially on equitable considerations that Mansfield State Bank's motion for an order directing the filing of the Texas judgment *nunc pro tunc* be granted. Recognizing the force of the dissenting opinion's analysis of the Texas authorities with regard to the legal effect in Texas of the ultimate action of the Supreme Court in Texas, we think it unnecessary to resolve that issue. The central issue here is not the effective date of the Texas judgment, but rather the effective date of the filing of that judgment under a New York recording statute (CPLR 5402) and a statute mandating the payment of "[j]udgments docketed and decrees entered against the decedent according to the priority thereof respectively." (SCPA 1811, subd 2, par [c].) The principle embodied in the dissenting opinion, although persuasively presented as achieving a just result in this case, inevitably introduces uncertainty and confusion in an area of law in which clarity and simplicity is particularly desirable. As this very case illustrates, the principle advanced in the dissenting opinion would inevitably be productive of complex, time-consuming and costly litigation among judgment creditors. An interesting question suggested, but not answered, in the dissenting opinion, is whether it would have become necessary to undo any distribution of the decedent's property that had been applied to his debts in accordance with the then-existing judgment filings during the period prior to the ultimate determination of the Supreme Court of Texas. On the analysis set forth in the dissenting opinion, it is not easy to see a principled reason for not doing so. Nor is it easy to see why that principle should be limited to the particular kind of appellate history presented here. Why should not a creditor granted summary judgment by an appellate court that should have been granted by a trial court be equally entitled to have his judgment recorded as of the date that it would have been recorded if the trial court had decided correctly? One could easily multiply other instances in which persuasive equitable arguments could be advanced in favor of departing from a statutory arrangement that was designed to avoid just such complications. An examination of the authorities principally relied upon in the dissenting opinion discloses that they all involve the traditional power of courts to correct judgments *nunc pro tunc* as a result of clerical errors. (See 46 Am Jur 2d, Judgments, §§ 225, 226; *Close v Gillespey*, 3 Johns 526; *Webb v Western Reserve Bank & Share Co.*, 115 Ohio St 247.) The distinction between the power of a court to correct judgments *nunc pro tunc* as a result of clerical errors has been distinguished sharply from the power to do so with regard to judicial errors and omissions. (See 46 Am Jur 2d, Judgments, §§ 199-227.) The long-established rule is concisely summarized in section 201 of volume 46 (Judgments) of

American Jurisprudence, Second: "The general rule is that an amendment of the record of a judgment, and a nunc pro tunc entry thereof, may not be made to correct a judicial error involving the merits * * * The power of the court in this regard is to make the journal entry speak the truth by correcting clerical errors and omissions, and it does not extend beyond such function." Of course the issue presented on this appeal does not in any way affect the obligation of the judgment debtor to pay postjudgment interest from the date of the original entry of judgment by the trial court in Texas. Concur — Sandler, J. P., Fein and Milonas, JJ.

Sullivan and Markewich, JJ., dissent in a memorandum by Sullivan, J., as follows: On December 27, 1976, a judgment was rendered by the District Court of Tarrant County, Texas, in favor of Mansfield State Bank against Maurice J. Cohn in the amount of $52,833.15, with 10% interest from the date of judgment. The judgment also awarded the bank $5,000 in attorney's fees with 9% interest and $131 in costs. Since Cohn was a New York resident the bank filed the Texas judgment in the office of the Clerk of New York County on June 16, 1977 pursuant to CPLR 5402. On February 23, 1978, a Texas intermediate appellate court reversed the District Court, whereupon the bank moved at Special Term, New York County to vacate the filing of the judgment. An order granting such relief was entered on July 28, 1978. On November 7, 1978, the Supreme Court of Texas modified the order of the intermediate appellate court to the extent of affirming "that portion of the judgment of the trial court pertaining to the principal debt and interest thereon" and reversing "that portion of the trial court judgment pertaining to [the bank's] recovery of attorneys' fees". The bank then applied on notice to Cohn for an order relieving it from the prior order which had vacated the filing of the judgment in New York, and providing for the reinstatement of the original judgment, as modified. Cohn offered no opposition and, on March 30, 1979, the motion was granted to the extent of allowing the filing of the "Texas * * * judgment as finally determined". Cohn died in April, 1979. The bank thereafter sought to have the judgment, as modified on appeal, filed, *nunc pro tunc,* as of June 16, 1977, the date of the original filing of the judgment in New York, but was advised by the County Clerk that a specific court order was required. An ex parte application for such relief was denied with leave to renew on notice to the personal representative of Cohn's estate, as well as all his creditors who had entered judgments in New York County. A search of the records of the Clerks of New York and Westchester Counties disclosed three unsatisfied judgments against Cohn: (1) In favor of Alan Bond Flack in the amount of $176.59, filed on April 14, 1967 in New York County (prior to the bank's judgment); (2) In favor of Albert Marks and others in the amount of $27,439.88 filed on October 3, 1977 in New York and Westchester Counties (while the bank's judgment was still filed); (3) In favor of the Chicago Title Insurance Co. in the amount of $20,000 filed November 21, 1978 in New York County, and June 19, 1979 in Westchester County (after the initial filing of the bank's judgment was vacated and prior to refiling). The bank then moved on notice to Cohn's personal representative and the judgment creditors for reinstatement of its judgment, *nunc pro tunc,* and for a declaration that the filing of the judgment, as of June 16, 1977, entitles it to priority over subsequent judgment creditors. Only Chicago Title opposed the motion, which Special Term denied (107 Misc 2d 1078). I would reverse and grant the relief sought. Special Term properly recognized (p 1078) that the issue to be resolved was "whether the final appellate reversal of a judgment or order of an intermediate appellate court, which had reversed and vacated an initial judgment of a trial court, reinstates the original trial court judgment as of the date it was initially entered", but

erred in finding that the judgment which the bank seeks to file, *nunc pro tunc,* is a "new judgment." Generally, the reversal of a judgment or order vacating a prior judgment or order operates to reinstate the original judgment or order, provided that all steps essential to its preservation are taken. (5B CJS, Appeal & Error, § 1951, p 516.) New York courts have followed this principle in at least two instances. In *Stigwood Organisation v Devon Co.* (91 Misc 2d 723, 724), it was held that "[a] reversal or modification should be regarded as dating back to the time of entry of the order or judgment appealed from." In *Matter of Weppler v Kern* (170 Misc 933, affd 257 App Div 940), a resolution of the Municipal Civil Service Commission was deemed to be validated as of the date it was passed by the commission rather than as of the date of its final adjudication in the Court of Appeals, notwithstanding its temporary invalidation by order of the Appellate Division. Other jurisdictions which apply this general rule include Idaho: "When a defendant, against whom a judgment has been entered, on motion for a new trial, secures an order setting aside and vacating the judgment, and thereafter upon appeal such order is reversed and a reinstatement of the judgment is ordered by the appellate court, the judgment is reinstated as of the date on which the original was entered. We think the reversal would have that effect without a formal order of reinstatement." (*Idaho Gold Dredging Corp. v Boise Payette Lbr. Co.,* 54 Idaho 765, 777, reh den 56 Idaho 660, cert den 299 US 577.) Similarly, the Supreme Court of Ohio has noted: "[W]here there is an appeal on questions of law and fact from a judgment and the appellate court renders a judgment different from that appealed from and its judgment is subsequently reversed for reasons which indicate that the original judgment was valid, that original judgment will be regarded as a valid judgment from the time of its entry." (*Matter of Witteman,* 21 Ohio St 2d 3, 12.) Special Term, however, found that the general rule was not "of any assistance" and turned to Texas law for guidance. In particular, it relied upon rule 502 of the Texas Rules of Civil Procedure and upon *Irvin v Ferguson* (83 Tex 491), a decision of the Supreme Court of Texas. Rule 502 provides as follows: "Upon the rendition by the Supreme Court of any such judgment or decree as is contemplated by the preceding rule, it shall not be necessary for the lower court from which the cause was removed to make any further order or decree therein, but the clerk of said lower court, on receipt of the mandate of the Supreme Court or the Court of Civil Appeals, shall proceed to issue execution thereon as in other cases." In *Irvin,* a money judgment secured by supersedeas bond had been appealed and affirmed by the Supreme Court of Texas. The court's mandate directed that execution was to issue on the judgment of the Supreme Court, rather than upon the original judgment from which the appeal had been taken. But, clearly, only the mandate of the Supreme Court would settle the liability of the sureties on the appeal bond and authorize execution for the costs of appeal, as these are matters which could not have been covered by the original judgment. Here, the mandate issued by the Supreme Court of Texas ordered that the cost of the appeals in both the intermediate appellate court and the Supreme Court were to be taxed one half against the judgment debtor and his surety, the Fidelity & Casualty Company of New York. Obviously, if the bank wanted to execute upon its judgment in Texas, it could have, in accordance with rule 502 of the Texas Rules of Civil Procedure and the *Irvin* case, executed upon the judgment, as modified by the Supreme Court, and included the additional costs awarded on appeal. But that it could have taxed appellate costs as part of the judgment does not, as Special Term held, create a new judgment nullifying the bank's rights under the original District Court judgment. The effect of an affirmance on a judgment at nisi prius was considered by the Court of Civil Appeals of Texas in *McWilliams*

*v McWilliams* 531 SW2d 392). There, enforcement of a divorce decree which had awarded a wife title to mortgaged property, subject to all indebtedness, had been stayed pending appeal by the filing of a supersedeas bond. The decree was ultimately affirmed by the Texas Supreme Court. In the husband's subsequent action to recover mortgage payments made by him during the pendency of the appeal the wife was awarded summary judgment on the ground that the complaint did not state a cause of action, since the parties' rights were not established until the decree had been affirmed by the Supreme Court. The Court of Civil Appeals reversed (p 394):" 'Final judgment' * * * applies when a judgment operates to finally vest rights as between the parties. In that context a decree appealed from by supersedeas * * * does not become final or effective until the case is disposed of on appeal. *Bagby v. Bagby,* 186 S.W.2d 702, 708 (Tex.Civ.App. — Amarillo 1945, no writ); *Williams v. Williams,* 60 Tex.Civ.App. 179, 125 S.W. 937, 940 (1910, error dism.) * * * This does not mean, however, that the trial court's judgment, having been finally affirmed on appeal, was effective only from the date of affirmance. The effect of the appeal and supersedeas were to prevent execution of the trial court judgment *pending disposal of the appeal. Davis v. State,* 96 Tex.Cr.R. 367, 257 S.W. 1099, 1100 (1924). The effect of affirmance was to implement the rights of the parties as they were determined by the trial court at the time its judgment was rendered. 'There can be no doubt that a person who has obtained a judgment afterwards affirmed on appeal is entitled to all the benefits that would have resulted from it had there been no appeal, for the affirmance gives effect to the original judgment' * * * *Texas Trunk R. R. v. Jackson,* 85 Tex. 605, 22 S.W. 1030, 1031 (1898). Although the parties were prevented from exercising the rights they had obtained in the trial court judgment until it was ultimately affirmed, affirmance of that judgment neither altered those rights nor affected their application from the time they were determined. *Beyer v. Templeton,* 147 Tex. 94, 212 S.W.2d 134, 139 (1948); *Yale v. Heard,* 26 Tex. 639, 640-41 (1863)." See, also, *Hart v Mills* (38 Tex 513, 516-517) where it was held that an affirmance of a judgment in the Supreme Court recognizes the validity of the judgment from the date of its rendition in the District Court. Thus, while it is the mandate of the Supreme Court of Texas upon which execution is issued where appeal is taken by supersedeas, the substantive rights of the parties after affirmance are those which flow from the judgment had no appeal been taken. (*Texas Trunk Ry. Co. v Jackson Bros.,* 85 Tex 605, *supra.*) For instance, "a judgment creditor is entitled to interest on the amount of the decree as reduced from the same date that interest would have run on the original judgment if it had not been reduced, that is, normally from the date of the original judgment." (*Lewis v Hill,* 429 SW2d 572, 575-576.) The argument in *Lewis* was similar to the one advanced by Chicago Title here — that since the appellate court determination was the final judgment the successful party's rights should accrue from the date of that determination. Since the bank's right to recover the principal sum and interest was ultimately affirmed, its rights with respect thereto attached, not on the date of affirmance, but on December 27, 1976, the date of rendition of the original District Court judgment. This fact, established by operation of law, cannot be avoided merely because recording of the affirmed portion of the judgment was suspended pending ultimate appellate disposition. Inasmuch as the judgment debtor's obligation to pay postjudgment interest from December 27, 1976 is unaffected, irrespective of whether the bank is successful in filing its judgment, *nunc pro tunc,*\* only the order of priority between the bank and the intervening judgment creditors is at issue in this controversy. Since Cohn's

---

\* Full faith and credit would dictate the bank's entitlement to interest from December 27, 1976, and not just from the date of the filing of the judgment in New York,

estate must satisfy the claims of unsatisfied judgment creditors in the order in which their judgments were filed (SCPA 1811, subd 2, par [c]), and the estate may have insufficient assets to pay all his debts, priority among the creditors is obviously of more than academic interest. Unless the Texas judgment, as modified, is filed in the State of New York, *nunc pro tunc,* as of June 16, 1977, the bank will be deprived of the priority it would have enjoyed but for the erroneous disposition of the intermediate appellate court. While retroactive filing of a judgment is permitted as between the original parties to a lawsuit, such filing cannot be allowed to prejudice or affect adversely the rights acquired by innocent third parties between the date of original judgment and its entry, *nunc pro tunc.* (46 Am Jur 2d, Judgments, § 225, p 460.) Special Term recognized the policy considerations underlying this principle but neglected to consider the critical fact that its applications limited to situations where the third party asserting such intervening right has no notice or knowledge of the original judgment. (46 Am Jur 2d, Judgments, § 226, p 461; *Close v Gillespey,* 3 Johns 526; *Webb v Western Reserve Bank & Share Co.,* 115 Ohio St 247.) The Marks' judgment was filed on October 3, 1977, after the filing of the bank's judgment. Since the judgment creditors claiming under that judgment are charged with notice of the bank's prior judgment, they are not innocent third parties within the contemplation of the general rule. (*Close v Gillespey,* 3 Johns, *supra,* at p 527.) Chicago Title, the second subsequent judgment creditor, may not have had notice or knowledge of the bank's judgment since it filed its judgment after the vacatur of the Texas judgment. But its judgment, which was based on the breach of an undertaking assumed by the judgment debtor on December 26, 1974, was obtained in respect of an obligation which pre-existed rendition of the Texas judgment, and thus, in accepting the undertaking, it could not have acted in reliance upon the absence of a recorded judgment. In such circumstances, filing of the Texas judgment, *nunc pro tunc,* should be effective even against it: "[I]n the case of pre-existing obligations, that is, debts which accrued before rendition of the original judgment, the judgment entered nunc pro tunc has been held to take effect as of the date for which it is entered, as against creditors of the judgment debtor who have in the meantime obtained judgment or attachment liens on such pre-existing obligations. This result is reached on the theory that the intervening lienor does not appear to have been misled, or have parted with value, during the interval elapsing between the date of the judgment and the time of making the nunc pro tunc entry." (46 Am Jur 2d, Judgments, § 225, pp 460-461; see, also, *Close v Gillespey,* 3 Johns 526, *supra; Webb v Western Reserve Bond & Share Co.,* 115 Ohio St 247, *supra.*) Chicago Title attempts to remove itself from the ambit of this principle by asserting that after entry of its judgment it expended money in establishing its priority as a creditor and in ascertaining the judgment debtor's available assets, and that such efforts would not have been undertaken had there been a superseding judgment. Yet, Chicago Title's judgment was, in fact, already subordinate to the other two judgments filed against the judgment debtor on October 3, 1977 in the amount of $27,439.88, and on April 14, 1967 in the amount of $176.59. More importantly, although Chicago Title filed its complaint against Cohn and another on May 24, 1977, approximately three weeks before the bank first filed its Texas judgment in New York, it apparently pursued its lawsuit for a year, as it was awarded summary judgment for its claim of $20,000 on May 10, 1978. Since the filing of the bank's judgment was not vacated until July, 1978, Chicago Title pursued

since that part of the Texas District Court's judgment which was affirmed by the Texas Supreme Court provided that the bank recover interest at 10% per annum on principal from December 27, 1976, the date judgment was rendered.

and completed its litigation against Cohn at a time when the bank's Texas judgment was a matter of record in New York. Only the actual docketing of its judgment occurred after vacatur of the filing of the bank's judgment and, as already noted, two other judgments against Cohn were already filed at that time. Thus, any moneys expended in obtaining a judgment before vacatur of the bank's judgment could not have been expended in reliance upon the absence of outstanding judgments against Cohn. The filing of a judgment itself is not a matter of any great expense. In any event, Chicago Title's attempt to perfect its lien on a pre-existing obligation does not accord it the status of an innocent holder for value, so as to defeat the bank's rights. (See *Matter of Ackerman,* 82 F2d 971, 973.) Thus, Special Term's laudable concern that "a docketed judgment proclaim that fact to all the world", lacks significance since none of the judgment creditors is an innocent third party who has parted with value in reliance upon the absence of a filed judgment. (107 Misc 2d 1078, 1081, *supra.*) Either the judgment creditor had notice of the Texas judgment by virtue of its original filing in New York on June 16, 1977, or it had parted with value long before that date. In these circumstances no valid purpose would be served by sacrificing the rights of the bank which, through no fault of its own, and solely as a result of the vicissitudes of the appellate process, has been unreasonably deprived of its priority. Unless permitted to refile the judgment, *nunc pro tunc,* it may well lose the fruits of the judgment it obtained and ultimately preserved on appeal. The bank's position is all the more compelling since it seeks, not filing of its judgment, *nunc pro tunc,* from the date of rendition, but merely reinstatement of a filing which, but for the short-lived reversal of the Texas intermediate appellate court, gave it priority in the first instance. Permitting entry of the Texas judgment, *nunc pro tunc,* so as to be effective as against the bank's subsequent judgment creditors, would be entirely consistent with the long-recognized power of this court to effect entry of judgment, *nunc pro tunc,* "in furtherance of the interests of justice". (*Jewett v Schmidt,* 108 App Div 322, 325, affd 184 NY 608.) As this court noted in *Jewett,* "[t]he exercise of this power is to prevent any event happening while the case is in the hands of the court which would otherwise deprive the successful party of his judgment." (*Supra,* at p 325.) Where the delay in rendering judgment arises from a cause not attributable to the fault of the parties, but within the control of the courts, the judgment may be entered as of the time it should or might have been rendered. (*Mitchell v Overman,* 103 US 62; *Fitch v International Harvester Co.,* 350 SW2d 395, 397, affd 163 Tex 221; *Farmer v Denton,* 231 SW2d 908.) Logic and equity dictate the same result where the docketing of a judgment has likewise been delayed. Accordingly, the order of the Supreme Court, New York County (Sherman, J.), entered January 16, 1981, denying the motion of the judgment creditor, Mansfield State Bank, for leave to file its judgment, *nunc pro tunc,* as of June 16, 1977, should be reversed and the motion granted.